Commonwealth *v.* Gurner, Appellant.

Argued April 13, 1970. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Lee A. Montgomery*, with him *Galbreath, Braham, Gregg, Kirkpatrick, Jaffee & Montgomery*, for appellant.

*Robert F. Hawk*, Assistant District Attorney, with him *David L. Cook*, Assistant District Attorney, and *John H. Brydon*, District Attorney, for Commonwealth, appellee.

OPINION BY HOFFMAN, J., October 2, 1970:

Appellant pleaded guilty to charges of burglary, assault and battery, prison breach, and larceny of an automobile and was sentenced to twelve to twenty-four years in prison. Subsequently, he filed a Post Conviction Hearing Act petition upon which a hearing was held. Act of January 25, 1966, P. L. (1965) 1580, 19 P.S. §1180-1 *et seq.* (Supp. 1970). From denial of that petition, this appeal followed.

The issue on appeal is whether the PCHA court should have made an independent inquiry into appellant's mental competency at the time of his guilty plea and sentencing.

The record at sentencing reflects that appellant had a disturbed background and turbulent childhood. Psychological reports from various reform schools showed that he was both hostile and a nonconformist. After a short period in the Navy, appellant was medically discharged following a two-month hospitalization for treatment of a nervous disorder. While in prison awaiting trial on the present charges, appellant attempted suicide by digging a deep hole in his arm with a plastic spoon.

The PCHA court was presented with additional evidence relating to appellant's physical and mental state at the time of plea and sentencing which had not been presented to the trial court. Both appellant and two other prisoners testified at the PCHA hearing that appellant had been in solitary confinement in a wet, unheated cell for an extended period immediately prior to the suicide attempt. During this confinement he was forced to sleep on a metal bench and was prevented from shaving and washing. He was not provided with clothes other than a pair of pants, and was placed on a reduced food allowance.

Two weeks after his attempted suicide appellant pleaded guilty, and shortly thereafter was sentenced. Only six weeks after sentencing, the prison superintendent petitioned for appellant's commitment to a mental institution, citing that he was hallucinating and that his brother and grandmother had been psychotic. The report of two qualified physicians recommended his commitment because of "[b]izarre and inappropriate behavior since confined; suicidal ideation and obsession with morbid thoughts; mood swings and episodes of very hostile, paranoid verbalizations; frequent suicidal traits; hitting his head against the wall; probaly hallucinating. At the present time turning to religous preoccupations." Pursuant to this report appel-

lant was committed to Farview State Hospital for the criminally insane, where he remained for a year and a half.

Mental competency of a defendant to stand trial is always crucial and pertinent, and a proper subject for judicial determination. This is because "Our society has always entertained an abhorrence for convicting, sentencing, or, in any way, proceeding penally against an accused who cannot comprehend his position before the court or who fails to meet the current legal standards of requisite mental competency. Proceedings which violate this fundamental and imbedded notion of fairness simultaneously violate our constitutional guarantees of due process of law." *Commonwealth ex rel. Hilberry v. Maroney,* 417 Pa. 534, 541, 207 A. 2d 794, 798 (1965) (citation omitted).

The test for competency has long been whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States,* 362 U.S. 402, 80 S. Ct. 788, 789 (1960). We conclude, in light of the evidence presented at the time of guilty plea, sentencing and PCHA hearing, that a full hearing should have been held to determine whether appellant had this degree of rational and factual understanding. *Pate v. Robinson,* 383 U.S. 375, 86 S. Ct. 836 (1966).

Numerous facts presented at the post-conviction hearing indicated that appellant was mentally unstable and suggested that he was incompetent to enter a valid guilty plea. He had been treated and discharged from the Navy for psychiatric reasons, suffered through a period of great stress in prison, attempted suicide, and been committed to a mental institution. All of these events occurred within an eight month period encom-

passing the plea of guilty and sentence. Although there was some testimony relevant to competency presented by laymen, it was of a sketchy and fragmentary nature, and did not involve any expert testimony. There was sufficient evidence before the hearing judge to require him, either sua sponte or upon motion, to order an extensive hearing into appellant's mental competency to enter a plea of guilty.

It is true that the issue of competency was not raised at the trial. However, the nature of an allegation of incompetency is such that "it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial." *Pate v. Robinson,* supra at 384, 86 S. Ct. at 841. Although neither his attorney nor the sentencing judge questioned the defendant's competence, "[w]hile [appellant's] demeanor at trial might be relevant to the ultimate decision as to his sanity, it cannot be relied upon to dispense with a hearing on that very issue." Id. at 386, 86 S. Ct. at 842. Similarly, "because lay observations will often be inaccurate, the fact that defense counsel did not think defendant incompetent although of evidentiary value can never be dispositive." *Hansford v. United States,* 365 F. 2d 920, 924 n.11 (D.C. Cir. 1966).

Here, when confronted with the numerous factors reflecting appellant's inability to comprehend the nature of the proceedings against him, the court was obligated to assure itself of appellant's competency through an extensive hearing. Since this was not done, the order of the PCHA court is reversed and the case remanded to that court for an evidentiary hearing to ascertain whether appellant was competent at the time of his plea and sentencing.

WRIGHT, P. J., would affirm on the able opinion of President Judge KIESTER.