Willie J. HARRIS, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted Dec. 12, 1979.

Decided Dec. 17, 1979.

Samuel J. Frabizzio, Wilmington, for defendant-appellant.

Kathleen Molyneux, Deputy Atty. Gen., Wilmington, for plaintiff-appellee.

Before McNEILLY, QUILLEN and HORSEY, JJ.

QUILLEN, Justice:

The defendant, after having been found guilty by a jury of Robbery First Degree and Kidnapping Second Degree in July of 1976, was sentenced on September 24, 1976. On July 29, 1977, the defendant through his trial counsel filed in the Superior Court a motion for postconviction relief under Superior Court Criminal Rule 35(a). The motion was denied without a factual hearing. A motion for reargument was filed supported by the affidavit of the Assistant Public Defender who represented the defendant at trial. The motion for reargument was denied. This appeal was filed in this Court from the denial of postconviction relief.

The motion for postconviction relief is based on the argument that the defendant was legally incompetent to stand trial and was denied due process of law in that his mental condition was not adequately explored prior to trial. It prayed that the defendant be granted a new trial or alternatively that the defendant have psychiatric and psychological evaluation and a hearing as to his competency at the time of trial. The prayer of the motion for reargument was limited to the latter point.

In denying the motion, the Trial Judge noted: (1) "the attorney who represented the defendant was certainly in the best position to judge his competence at the time"; and (2) "[o]n no occasion prior to or during trial was there any suggestion of circumstances such as are set forth in the motion"; and (3) "[t]he defendant's relatives and friends have withheld their information too long for it now to deserve consideration." In denying the motion for reargument, which was supported by an affidavit of trial defense counsel, the Trial Judge characterized the affidavit as indicating "the defendant was indifferent about his trial" and found such indifference as "not a sufficient showing to move the Court to take the unusual step of holding a competency hearing over a year after trial."

■ We are very sympathetic with the sentiments expressed by the Trial Judge. Certainly the timing of the motion and the absence of any dramatic event prior to or at the trial are indeed significant and, given the need for finality and judgments on fresh evidence, defendants should be severely limited in postconviction applications based on competency. But, notwithstanding our appreciation of the rulings below, on the unique facts of this case, we hold the Trial Judge abused his discretion to the extent that a factual hearing was denied prior to the decision. Three factors demonstrate the unusual nature of the case and, in our judgment, mandate a factual hearing.

First, unknown to defense counsel through the day of trial and for considerable time thereafter, the defendant had a history of severe mental retardation. While the original motion for postconviction relief did not document this history to the extent desirable, it did specifically refer to reports of the defendant's attendance as a youth at the Charles W. Bush School, a school devoted to the seriously mentally defective student. He had been referred there by a school psychologist after testing wherein he received a verbal score of 58 on the Wechsler Intelligence Scale for Children, with his full scale I.Q. score placed at 53. In other testing reports, under a rating system where his scoring level was rated in relation to other children at the Bush School, he scored poorly. Thus, the claim of incompetency in the motion was given some support by an available documented history.

Second, the candid affidavit of trial defense counsel in support of the motion for reargument indicates behavior by the defendant prior to trial which may demonstrate incompetency. After reflection, counsel, by his own sworn statement, has questioned defendant's "lack of comprehension of the serious difficulty that he was in and the probable consequences of his lack of cooperation." Counsel offers a plausible explanation why he was not alerted to the fact of defendant's deficiencies. He took defendant's attitude of minimal cooperation as evidencing hostility and mistrust of the Public Defender's office and white persons in general rather than a mental defect. This sworn statement by an officer of the Court cannot be lightly disregarded or minimized.

Finally, as to the postconviction period, it appears that defendant's violent and irrational behavior in confinement spurred the concern of his relatives and friends who then revealed to defendant's counsel the information about his past history and triggered the postconviction motions. The Trial Judge recognized the possibility of mental illness and the possible need for an administrative transfer to the State Hospital, but he in effect held, without a hearing, that any such condition had arisen after trial and sentence. The information as to

postconviction condition also supports the desirability of a hearing.*

 Turning from the facts to the law, we must begin with the principle that the conviction of an accused person while he is legally incompetent to stand trial violates due process of law. *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); *Bishop v. United States*, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956). The standard for legal competency to stand trial is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960).

The purpose of a Rule 35(a) motion and hearing is to give the Court the chance to correct constitutional infirmities in the conviction or sentence. It provides for a hearing "[u]nless the motions and the files and records of the case show to the satisfaction of the Court that the applicant is not entitled to relief." The standard which we must apply to the Court's denial of defendant's motions was whether it abused its discretion in not ordering a hearing. *Shy v. State*, Del.Supr., 246 A.2d 926 (1968); *accord, Clyburn v. United States*, D.C.App., 381 A.2d 260, 262–3 (1977), *cert. den.* 435 U.S. 999, 598 S.Ct. 1656, 56 L.Ed.2d 90 (1978).

The Trial Court's findings that defendant's counsel was in the best position to evaluate defendant's competence at the time, and that the information was withheld for too long, must yield to the unique, serious and documented circumstances clearly present in this case. Since material and substantial questions of fact were raised, in our judgment, the Superior Court should conduct a hearing on the matter. *Pate v. Robinson, supra; Commonwealth v. Gurner*, 217 Pa.Super. 213, 269 A.2d 375 (1970); *Commonwealth v. Maroney*, 417 Pa. 534, 207 A.2d 794 (1965). Under these circumstances and in light of trial defense counsel's affidavit, it cannot, as a matter of law, be of dispositive significance that counsel did not recognize defendant's deficiency at the time of trial. *Hansford v. United States*, D.C.Cir., 365 F.2d 920, 924 (1966); *Commonwealth v. Gurner, supra*, 269 A.2d at 377; accord, *Pate v. Robinson, supra*, 383 U.S. at 385, 86 S.Ct. at 842, 15 L.Ed.2d at 822.

The judgment of the Superior Court is reversed and the case is remanded to the Superior Court to conduct a hearing on the issue of whether defendant was competent to stand trial in July of 1976.

---

* Counsel through briefing have brought to this Court's attention that a competency hearing has been held for this defendant in July 1979 in connection with other charges pending against him in the Superior Court. The Superior Court adjudged him incompetent to stand trial at that time. That decision was based on the testimony of an expert psychologist who examined the defendant and found that Mr. Harris was psychotic and not able to cooperate with his attorney. While this evidence was unavailable to the Trial Court in this case, and while this, and other postconviction evidence may raise legal questions of admissibility, its present availability in a very concrete form, along with the other factors noted, certainly suggests a long-term problem worthy and capable of exploration.