# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,        )
                               )
        Plaintiff,       )
                               )
                               )
     v.                )    Cr. ID. No. 93008966DI
                               )
                               )
LUTHER DICKSON,        )
                               )
        Defendant.    )

Submitted: November 3, 2023
Decided: February 29, 2024

## COMMISSIONER'S REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF SHOULD BE SUMMARILY DISMISSED

Susan Purcell, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State.

Luther Dickson, James T. Vaughn Correctional Center, Smyrna, Delaware, *pro se*.

SALOMONE, Commissioner

This 29th day of February 2024, upon consideration of Defendant's Motion for Postconviction Relief, it appears to the Court as follows:

## BACKGROUND AND PROCEDURAL HISTORY

On March 29, 1993, Defendant Luther Dickson ("Dickson" or the "Defendant") was indicted on the charges of (i) Burglary First Degree, (ii) Unlawful Sexual Intercourse First Degree, (iii) Unlawful Sexual Penetration Third Degree and (iv) Kidnapping First Degree. On August 30, 1993, he was reindicted on these same charges and two additional charges of Robbery First Degree and Unlawful Sexual Contact in the Third Degree. The charges arose out of an incident that occurred on the night of March 6-7, 1993 in which Dickson forced his way into an elderly woman's home, sexually assaulted her, stole her money, and tore her telephone lines from the wall so she would be unable to call for help.

Dickson was tried twice with respect to these charges. The first jury trial in this case began on September 13, 1993. At the conclusion of the first trial, the jury found Dickson guilty of Unlawful Sexual Penetration Third Degree, Unlawful Imprisonment Second Degree (a lesser-included offense of Kidnapping), and Robbery First Degree. The jury was unable to reach a verdict on the Unlawful

1

Sexual Intercourse First Degree and Burglary First Degree charges and a mistrial was declared as to those counts.[1]

The second jury trial in this case was conducted on December 12-16, 1993. On December 16, 1993, a second jury found Dickson guilty of Unlawful Sexual Intercourse in the First Degree and the lesser-included offense of Burglary in the Second Degree. The remaining charge of Unlawful Sexual Contact in the Third Degree was *nolle prossed*.[2]

On February 4, 1994, Dickson was sentenced to life imprisonment for the Unlawful Sexual Intercourse First Degree conviction and an additional ten years of incarceration on the remaining convictions, followed by probation.[3] On February 17, 1994, Dickson filed a direct appeal of his convictions to the Delaware Supreme Court.[4] The Supreme Court affirmed the convictions on November 7, 1994.[5]

On April 10, 2010, over fifteen years after the Supreme Court affirmed his convictions, Dickson filed his first *pro se* Motion for Postconviction Relief.[6] In this first Motion, Dickson asserted four grounds for relief, which included, *inter alia*, claims that (i) he was unlawfully deprived of DNA testing which could prove his innocence and (ii) another person committed the crimes for which he was

---

[1] *State v. Dickson*, Delaware Superior Court Criminal Docket, ID No. 93008966DI at 5 (hereinafter, "D.I. __").
[2] D.I. 8-9.
[3] D.I. 10.
[4] D.I. 12.
[5] *Dickson v. State,* 1994 WL 632533 (Del.).
[6] D.I. 30.

2

convicted.[7] Despite being procedurally barred from bringing his Motion for Postconviction Relief pursuant to Superior Court Criminal Rule 61(i)(1) and (3), the Court considered his claims and found them all to be without merit.[8]

On November 26, 2018, Dickson filed a second *pro se* Motion for Postconviction Relief (the "Second Rule 61 Motion") and Motion for Appointment of counsel.[9] The Second Rule 61 Motion was prompted by a letter, dated December 18, 2017, from the United States Department of Justice, which advised that the FBI had determined that its expert analyst on microscopic hair comparison evidence ("MHC evidence"), Federal Agent Michael Malone, may have overstated the results of its examination by testifying to the conclusiveness of microscopic hair samples in making an identification.[10] Counsel was appointed to represent Dickson in his Second Rule 61 Motion to determine whether the MHC evidence at issue prejudiced Dickson's case in light of the Department of Justice's letter raising this new revelation.[11]

On June 28, 2019, assigned counsel filed a Motion to Withdraw as Postconviction Counsel pursuant to Superior Court Criminal Rule 61(e)(7).[12] In the Motion to Withdraw, Dickson's Rule 61 counsel represented that he had

---

[7] *Id.*
[8] D.I. 42, 44.
[9] D.I. 46-47.
[10] D.I. 46.
[11] D.I. 50, 53.
[12] D.I. 54-56.

thoroughly reviewed the transcripts of the proceedings and the record in this case and that after undertaking this thorough analysis, counsel determined that Dickson did not have any meritorious basis to raise a claim for relief.[13]

Rule 61 counsel explained that the new MHC revelations were not helpful to Dickson because MHC testimony and the report were only admitted at Dickson's first trial. The jury was unable to reach a verdict as to the Unlawful Sexual Intercourse First Degree and Burglary First Degree charges in that first trial. The MHC evidence was not used and was not mentioned to the jury in any fashion during the second trial. The FBI agent, Agent Michael Malone, did not testify at Dickson's second trial nor was the MHC report admitted at the second trial. At the second trial, Dickson was convicted of Unlawful Sexual Intercourse First Degree, for which he is serving a life sentence, and was also convicted of Burglary in the Second Degree.

Rule 61 counsel concluded that the new evidence that led to the filing of the Second Rule 61 Motion, that the FBI overstated the results of its examination of microscopic hair samples, played no part whatsoever in Dickson's conviction of Unlawful Sexual Intercourse First Degree. Therefore, the second trial was untainted by any alleged FBI misconduct. Accordingly, Rule 61 counsel

---

[13] *See*, D.I. 54-56. Rule 61 counsel's Motion to Withdraw along with the accompanying Memorandum in Support of Motion to Withdraw and appendix.

concluded that the MHC evidence claims were without merit under the facts and circumstances of this case and sought to withdraw as Rule 61 counsel.

Prior to filing the Motion to Withdraw, and again at the time of the filing, Rule 61 counsel advised Dickson that he had the right to file a response thereto within 30 days, if Dickson objected to the Motion to Withdraw.[14] Dickson chose not to file a response.

Following a full, thorough and careful review of the Second Rule 61 Motion, Rule 61 counsel's Motion to Withdraw, and the record, a Superior Court Commissioner recommended denial of the Second Rule 61 Motion.[15] Dickson did not file any objections to the Commissioner's Report and Recommendation.[16] On October 16, 2019, after a *de novo* review of the record and the Commissioner's Report and Recommendation, the Superior Court entered an Order adopting the Commissioner's Report and Recommendation and denying the Second Rule 61 Motion.[17] Dickson did not appeal the denial of his Second Rule 61 Motion to the Delaware Supreme Court.[18]

---

[14] *See* D.I. 54 (letter, dated June 28, 2019 from Rule 61 counsel advising Dickson of the Motion to Withdraw and having 30 days to file a response thereto).

[15] See, *State v. Dickson,* 2019 WL 473830 (Del.Super.).

[16] Pursuant to 10 *Del. C.* § 512(b) and Rule 62, any objections to the Report needed to be filed within 10 days after the filing of the Report.

[17] D.I. 59.

[18] Dickson was required to file an appeal within 30 days of the Superior Court's October 16, 2019 Order as required by Superior Court Criminal Rule 61(k) and Delaware Supreme Court Rule 6(a)(iv). He did not appeal within the required time period or at any time thereafter.

On September 14, 2020, eleven months after the Court's Order in his Second Rule 61 Motion, Dickson filed a third *pro se* Motion for Postconviction Relief (the "Third Rule 61 Motion").[19] In the Third Rule 61 Motion, Dickson objected to his counsel's decision to move to withdraw in the Second Rule 61 Motion, and objected to and challenged the Court's decision in the Second Rule 61 Motion that the MHC evidence claims were without merit. Dickson did not raise anything new or recently discovered in his Third Rule 61 Motion, but rather, belatedly objected to this Court's determination in his Second Rule 61 Motion.

A Superior Court Commissioner recommended that the Third Rule 61 Motion be summarily dismissed because it failed to meet the pleading requirements for second or subsequent postconviction motions in that Dickson failed to establish that (i) new evidence exists that creates a strong inference that he defendant is actually innocent of the charges for which he is convicted, or (ii) the existence of a new rule of constitutional law made retroactive to cases on collateral review rendered his convictions invalid.[20] The Commissioner also found the Third Rule 61 Motion to be procedurally barred under Superior Court Criminal Rule Rule 61(i)(4) since the claims raised in the Third Rule 61 Motion were resolved in the Second Rule 61 Motion.[21] Dickson did not object to the Commissioner's

---

[19] D.I. 60.
[20] Super. Ct. Crim.R. 61(d)(2) & (5); Rule 61(i).
[21] D.I. 63.

findings with respect to his Third Rule 61 Motion and the Superior Court entered an Order adopting the Commissioner's Report and Recommendation and denying the Third Rule 61 Motion.[22] Dickson did not appeal the denial of his Third Rule 61 Motion to the Delaware Supreme Court.

## DICKSON'S FOURTH RULE 61 MOTION

On October 26, 2023, Dickson filed a fourth *pro se* Motion for Postconviction Relief (the "Fourth Rule 61 Motion") pursuant to which he asserts (i) "newly discovered evidence of ineffective assistance of trial counsel, appellate and postconviction counsel" in his initial Rule 61 Motion and (ii) "newly discovered evidence of police and prosecutorial misconduct based upon *Brady* material violation[s]."[23] He claims that both "ground one and ground two [are] based on actual innocence."[24]

In his Memorandum of Law in Support of his Fourth Rule 61 Motion, Dickson contends that trial counsel failed to conduct an adequate investigation into certain *Brady* material within the State's possession which would have demonstrated that Dickson did not commit the crimes for which he was convicted.[25] Dickson asserts that another individual by the name of Kevin J.

---

[22] D.I. 64.
[23] D.I. 65-66.
[24] *Id.*
[25] D.I. 66 at 5-6.

7

Howard ("Howard") committed the crimes.[26] He contends that a witness told the police that she gave a "slip of paper" containing her telephone numbers to the man who was repairing her car.[27] That paper was found wedged in the door of the rape victim's home.[28] Dickson asserts that he and Howard share similar facial features and that the witness mistakenly identified Dickson as the man to whom she gave the slip of paper.[29] He further contends that Howard is an auto mechanic while he is not.[30] Dickson argues that all of this information was contained in the police reports and that trial counsel was ineffective for failing to present evidence at Dickson's trial of the possibility that another suspect committed the crimes alleged.[31] He claims this evidence, which was not presented to the jury, may show his actual innocence. He likewise claims that postconviction counsel was deficient for failing to raise trial counsel's purported ineffectiveness in his Second Rule 61 Motion.[32] Therefore, according to Dickson, he is "entitled to a new trial where he can have the benefit of effective assistance of counsel and the newly discovered evidence or identified evidence of another suspect that former trial counsel should have presented at his original trial."[33]

---

[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.*
[31] *Id.* at 7.
[32] *Id.* at 7-10.
[33] *Id.* at 10.

Dickson also asserts that he has identified "new evidence of police and prosecutorial misconduct based upon the intentional loss or willful destruction of DNA testing of the physical evidence that would probably show with a reasonable degree of technical certainty that he is actionally [sic] innocent . . ."[34] Put more simply, Dickson seems to contend that if certain unspecified physical evidence from the crime scene had been tested for DNA it would have established his actual innocence and proved that Howard committed the crimes. In support of his assertion of police and prosecutorial misconduct, Dickson cites a letter, dated January 28, 2002, from the Wilmington Police Department to a representative of the Innocence Project in which the police state that they no longer have any evidence in their possession that is associated with Dickson's case. He makes the leap from this letter that the loss of the evidence was willful and that the State violated his due process rights because "the undisclosed physical evidence was favorable to him because it was exculpatory and impeaching" and material to his defense.[35]

## APPLICABLE LAW FOR POST CONVICTION RELIEF

**Rule 61 and Procedural Bars to Relief**

Superior Court Criminal Rule 61 ("Rule 61") governs the procedures by which an incarcerated individual may seek to have his conviction set aside on the

---

[34] *Id.*
[35] *Id.* at 13.

ground that the court lacked jurisdiction or any other ground that is a sufficient factual and legal basis for a collateral attack upon the conviction.[36] That is, it is a means by which the court may correct Constitutional infirmities in a conviction or sentence.[37] "Rule 61 is intended to correct errors in the trial process, not allow defendants unlimited opportunities to relitigate their convictions."[38]

Given that intent, before considering the merits of any claims for postconviction relief, the Court must first determine whether there are any procedural bars to the postconviction motion.[39] Rule 61(i) establishes four procedural bars to postconviction relief.[40] Rule 61(i)(1) prohibits a motion for postconviction relief from being filed "more than one year after the judgement of conviction is final or, if it asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final, more than one year after the right is first recognized by the Supreme Court of Delaware or by the United States Supreme Court."[41]

Rule 61(i)(2) bars successive motions for postconviction relief unless certain conditions are met.[42] Pursuant to Rule 61(i)(3) and (4), any ground for relief that was not previously raised is deemed waived, and any claims that were formerly

---

[36] Super. Ct. Crim. R. 61(a)(1).
[37] *Harris v. State*, 410 A.2d 500 (Del. 1970).
[38] *Ploof v. State*, 75 A.3d 811,820 (Del. 2013).
[39] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[40] Super. Ct. Crim. R. 61(i)(1)-(4).
[41] Super. Ct. Crim. R. 61(i)(1).
[42] Super. Ct. Crim. R. 61(i)(2).

adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, are thereafter barred.[43]

The foregoing bars to relief do not apply to a claim that the court lacked jurisdiction or to a claim that satisfies the pleading requirements of Rule 61(d)(2). Rule 61(d)(2) provides as follows:

> A second or subsequent motion under this rule shall be summarily dismissed, unless the movant was convicted after a trial and the motion either:
>
> (i)   pleads with particularity that new evidence exists that creates a strong inference that the movant is actually innocent in fact of the acts underlying the charges of which he was convicted; or
>
> (ii)   pleads with particularity a claim that a new rule of constitutional law, made retroactive to cases on collateral review by the United States Supreme Court or the Delaware Supreme Court, applies to the movant's case and renders the conviction or sentence invalid.[44]

The Delaware Supreme Court recently examined the first prong of Rule 61(d)(2), referred to as the "actual innocence exception," in *Purnell v. State* where the Court explained what constitutes "new" evidence and a "strong inference" of innocence.

> To qualify for an exception to Rule 61's procedural bars against untimely, successive motions, [a defendant] must

---

[43] Super. Ct. Crim. R. 61(i)(3) and (4).
[44] Super. Ct. Crim. R. 61(d)(2).

identify with particularity new evidence that creates a strong inference that he is actually innocent in fact of the acts underlying the charges. Stated differently, [a defendant] must present additional evidence that was not available at trial and would not have been despite his exercise of due diligence. [The defendant] must also convince us that the new evidence, when considered in the context of all the relevant evidence by a properly instructed jury, is such as will probably change the result if a new trial were granted."[45]

The Court also found that "satisfying the actual innocence test is, by design, a heavy burden, and such meritorious claims are exceedingly rare."[46]

This is Dickson's Fourth Rule 61 Motion and it is procedurally barred. First, the Fourth Rule 61 Motion was filed nearly 29 years after the judgment of conviction became final and should be barred by Rule 61(i)(1) for being untimely. Second, the Fourth Rule 61 Motion should be barred by Rule 61(i)(3) because Dickson failed to assert any of the instant grounds for relief at trial, on direct appeal or in his initial Motion for Postconviction Relief. Third, while Dickson makes yeoman efforts to try to couch his claims in terms that meet the pleading requirements of Rule 61(d)(2)(i), he has not presented any new or additional evidence of actual innocence that was not available to him at trial or otherwise

---

[45] *Purnell v. State*, 254 A. 3d 1053 (Del. 2021), at 1060.
[46] *Id.* (noting that Purnell was the first defendant to be found eligible for the actual innocence exception to Rule 61's procedural bar). In *Purnell*, the Court found much of the evidence presented by the defendant to be "new" because trial counsel's disabling conflict of interest prevented him from investigating or pursuing several key areas of potentially exonerating evidence and defensive strategies on behalf of the defendant. No such conflict of interest exists in Dickson's case.

12

exonerates him of the crimes for which he was convicted.[47]  Dickson proffers no post-trial recantation by a key witness or exculpatory physical evidence that was not previously available to the defendant as was the case in *Purnell*.  Rather, what Dickson has presented to the Court in his Fourth Rule 61 Motion is merely his theory and conjecture that another person committed the crimes for which he was convicted coupled with supposition that evidence that no longer exists would exonerate him.  Such mere assertions of actual innocence do not suffice under Rule 61(d)(2)(i).[48]  As such, his Fourth Rule 61 Motion should also be barred under Rule 61(i)(2).

Moreover, the Fourth Rule 61 Motion simply restates the same issues raised by Dickson in his initial Rule 61 Motion in which he asserted, among other things, that (i) he was deprived of his right to postconviction DNA testing to establish his innocence and (ii) Howard committed the crimes for which he was convicted.[49]  Both of these claims were found to be without merit by the Court in 2010 after a thorough review of all the evidence in the case.[50]  The Commissioner concluded in his Report and Recommendation as follows:

---

[47] Nor has he cited to any new rule of constitutional law made retroactive to cases on collateral review under Rule 61(d)(2)(ii) or that the Court lacked jurisdiction.

[48] *See State v. Miller*, 2023 WL 2854227, at *5.  Having found no "new" evidence, the Court need not consider the second "persuasiveness" prong of the *Purnell* test.

[49] D.I. 30.

[50] The evidence against Dickson at trial was substantial and included, among other things, (i) a taped confession by Dickson admitting to being present at the scene of the crime, (ii) victim testimony that she knew Dickson because he had shoveled her snow on two occasions and she

> Two juries found Defendant guilty beyond a reasonable doubt. Defendant seeks evidence which no longer exists and asks for that evidence to be tested over 17 years after his conviction in a motion that is thirteen years too late. Defendant has failed to persuade this Court that his theories about another rapist or possible DNA evidence warrants this Court to reopen his case and disregard the evidence or the jury's verdict.[51]

Given the foregoing, Dickson's current claims in his Fourth Rule 61 Motion are also procedurally barred under Rule 61(i)(4) as they have been previously adjudicated by this Court. These claims cannot now be refined, restated or re-raised in order to again seek judicial review.[52]

---

got a "very clear look" at him during the rape and (iii) two witnesses that testified that Dickson was near the scene of the crime on the night of the rape. D.I. 42 at 11-12.

[51] *Id.* at 13.

[52] *See State v. Clay*, 2022 WL 893744, at *2 (Del. Super. Mar. 25, 2022), *aff'd Clay v. State*, 2022 WL 4295417 (Del. Sept. 16, 2022) (finding that where an affidavit asserting the defendant's innocence was formerly adjudicated in a postconviction proceeding, it cannot constitute newly discovered evidence in a subsequent postconviction proceeding); *see also Johnson v. State,* 1992 WL 183069, *1 (Del.); *Duhadaway v. State,* 877 A.2d 52 (Del. 2005).

## CONCLUSION

Dickson postconviction claims are procedurally barred pursuant to Rule 61(i)(1), (3) and (4) and he has failed to meet the strict pleading requirements for proceeding with his motion under Rule 61(d)(2)(i) as he has failed to provide any newly discovered evidence of his actual innocence. For the foregoing reasons, Dickson's Fourth Motion for Postconviction Relief should be **SUMMARILY DISMISSED**.

**IT IS SO RECOMMENDED.**

/s/ *Janine M. Salomone*
Commissioner Janine M. Salomone

cc:    Prothonotary
Susan Purcell, Esquire, Deputy Attorney General
Luther Dickson, *pro se*. (SBI #00173261)

15