# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ID No. 2108008637 |
| | ) | |
| DEMETRIUS BROWN, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: March 22, 2024
Decided: June 27, 2024
Corrected: July 9, 2024[1]

## COMMISSIONER'S REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF SHOULD BE DENIED

William H. Leonard, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, *Attorney for the State*.

Gregory M. Johnson, Esquire, Wilmington, Delaware, *Counsel for Defendant*.

Demetrius Brown, Philadelphia, Pennsylvania, *pro se*.

SALOMONE, Commissioner

---

[1] The Report and Recommendation has been corrected to remove superfluous language and amend footnotes 14 through 18 and footnotes 21 through 24.

This 27th day of June 2024, upon consideration of the Motion for Postconviction Relief filed by Defendant Demetrius Brown ("Brown" or the "Defendant"), it appears to the Court as follows:

## FACTS AND PROCEDURAL HISTORY

On August 17, 2021, officers from the Wilmington Police Department responded to the area of West 6th Street and North Harrison Street after hearing multiple gunshots being fired in the area.[2] A victim at the scene identified Brown as the person who had shot at him with a black handgun.[3] A second victim at the scene, who shares a child with Brown, reported that prior to the shooting she saw Brown at the front window of her residence and then pointed the handgun at her while she was inside.[4] Police obtained video surveillance from the surrounding area.[5] In one of the videos the first victim can be seen and heard yelling down the street, but no video showed the actual shooter.[6] That same victim showed police a text message from Brown after the shooting in which Brown inquires "Bro, you ok?"[7] Police later

---

[2] These general facts are taken from the Affidavit of Probable Cause, dated August 17, 2021, *State v. Demetrius Brown*, Delaware Superior Court Criminal Docket, ID No. 2108008637 (hereinafter, "D.I. __") 1.

[3] *Id.*

[4] *Id.*; *see also* Transcript of Preliminary Hearing, dated September 1, 2021, *State v. Demetrius Brown*, ID No. 2108008637 (hereinafter, "D.I. 13").

[5] D.I. 13 at 16-17.

[6] D.I. 45.

[7] *Id.*

1

recovered a firearm that ballistically matched the shell casings at the scene at the home of one of Brown's relatives.[8]

On October 25, 2021, a grand jury indicted Brown for the following offenses: (i) Aggravated Menacing, (ii) Reckless Endangering First Degree, (iii) two counts of Possession of a Firearm During the Commission of a Felony, (iv) Possession of a Firearm by a Person Prohibited, (v) Carrying a Concealed Deadly Weapon, and (vi) two counts of Criminal Mischief in connection with the shooting that occurred on August 17, 2021.[9]  On August 3, 2022, Brown plead guilty to three charges, which included Aggravated Menacing, Reckless Endangering First Degree, and Carrying a Concealed Deadly Weapon.[10]  Prior to entering the plea, Brown signed the plea agreement, a Truth-in-Sentencing Guilty Plea Form and an Immediate Sentencing Form.[11] As part of the plea agreement, the State agreed to (i) recommend a total sentence of three (3) years at Level V followed by decreasing levels of probation and (ii) enter a *nolle prosequi* on the remaining charges.[12]  The Court followed that recommendation when sentencing the Defendant.[13]

---

[8] *Id.*
[9] D.I. 10.
[10] D.I. 29.
[11] D.I. 45 (Exhibit A).
[12] Plea Agreement, dated August 1, 2022, *State v. Demetrius Brown*, ID No. 2108008637.
[13] Transcript of Plea Hearing, dated August 3, 2022, *State v. Demetrius Brown*, ID No. 2108008637 (hereinafter, "D.I. 58").

On August 24, 2022, Brown filed a Motion for Sentence Reduction/Modification in which he argued, among other things, that he did not have two prior violent felony convictions at the time he pled guilty.[14] On October 24, 2022, the State responded to Brown's Motion for Sentence Reduction/Modification on the issue of his criminal history.[15] On November 7, 2022, Brown filed a Reply to the State's Response.[16] On December 6, 2022, the Court found that Brown had two prior violent felonies at the time he committed the offenses to which he pled guilty and denied his Motion for Sentence Reduction/Modification.[17]

Brown filed a subsequent Motion for Modification of Sentence on May 8, 2023, in which he sought to have the last six months of his Level V sentence modified to six months at Level IV.[18] Brown contended that a Level IV work release program would better prepare him to reintegrate into society upon his release.[19] He further requested that the Court order him to complete the Road to Recover program so that he would be better prepared to cope with his previous drug addiction when released.[20] On December 1, 2023, the Court granted his Motion for Modification, in

[14] D.I. 30.
[15] D.I. 34.
[16] D.I. 38.
[17] D.I. 40.
[18] D.I. 46.
[19] *Id.*
[20] *Id.*

part, by ordering Defendant to complete the Road to Recover program while at Level V.[21]

Brown did not appeal his sentence to the Delaware Supreme Court.

## MOTION FOR POSTCONVICTION RELIEF

### a. Brown's Contentions.

On October 27, 2022, the Defendant filed a *pro se* Motion for Postconviction Relief (the "Initial Motion"),[22] which he later amended on January 20, 2023 (the "Amended Motion," and together with the Initial Motion, the "Motion for Postconviction Relief").[23] Through both filings, Brown raises a total of seven grounds for postconviction relief, six of which are claims of ineffective assistance of counsel and one of which relates to the legality of his sentence. The claims for postconviction relief asserted by the Defendant are fairly summarized as follows:

**Ground One:** Counsel never viewed the video surveillance evidence with the Defendant or viewed it at all;

**Ground Two:** Counsel sent a private investigator to view the video surveillance evidence with the Defendant on two occasions, but the video which was shown the second time was different than the first;

**Ground Three:** Due to counsel switching the video surveillance evidence and/or withholding video surveillance evidence, the Defendant was coerced into accepting the guilty plea when counsel stated that if the Defendant did not take the plea that he "would do life in jail.";

---

[21] D.I. 52. Brown filed an additional motion regarding modification of his sentence which the Court denied on February 19, 2024. D.I. 55. Brown completed his Level V sentence and was released from incarceration to Level III probation on March 21, 2024.
[22] D.I. 36.
[23] D.I. 41.

4

**Ground Four:** Brown asserts that he was illegally sentenced to three years at Level V for his conviction for Carrying a Concealed Deadly Weapon.[24] Brown contends that the Truth-In-Sentencing guidelines for a conviction for Carrying a Concealed Deadly Weapon is 0 to 2 years at Level V, but that the State improperly argued that he had two prior violent felony convictions;

**Ground Five:** Counsel was ineffective for failing to watch the video surveillance evidence personally with the Defendant so that the Defendant could discuss the inconsistencies between the video and the State's case directly with defense counsel;

**Ground Six:** Inconsistencies between the written police narrative and the time stamps on the video surveillance evidence were not given sufficient exculpatory weight by defense counsel; and

**Ground Seven:** Counsel coerced the Defendant to take the guilty plea and assured him that he would be sentenced to two years of Level V time for his conviction for Carrying a Concealed Deadly Weapon instead of the three years articulated in the plea agreement because counsel and the judge knew each other and were in good stead.

Each of these claims are discussed more fully below.

### b. Rule 61 and Procedural Bars to Relief

Superior Court Criminal Rule 61 ("Rule 61") governs the procedures by which an incarcerated individual may seek to have his conviction set aside on the ground that the court lacked jurisdiction or any other ground that is a sufficient factual and legal basis for a collateral attack upon the conviction.[25] That is, it is a means by which the court may correct Constitutional infirmities in a conviction or

---

[24] D.I. 36.
[25] Super. Ct. Crim. R. 61(a)(1).

sentence.[26]  "Rule 61 is intended to correct errors in the trial process, not allow defendants unlimited opportunities to relitigate their convictions."[27]

Given that intent, before considering the merits of any claims for postconviction relief, the Court must first determine whether there are any procedural bars to the postconviction motion.[28]  Rule 61(i) establishes four procedural bars to postconviction relief.[29]  Rule 61(i)(1) prohibits a motion for postconviction relief from being filed "more than one year after the judgement of conviction is final or, if it asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final, more than one year after the right is first recognized by the Supreme Court of Delaware or by the United States Supreme Court."[30]  Defendant was sentenced by the Court on August 3, 2022 and filed his Initial Motion on October 27, 2022 and his Amended Motion on January 20, 2023.  Therefore, Defendant's Motion for Postconviction Relief was timely filed.

Rule 61(i)(2) bars successive motions for postconviction relief unless certain conditions are met.[31]  This is the Defendant's first Motion for Postconviction Relief so the procedural bar set forth in Rule 61(i)(2) is not applicable.

---

[26] *Harris v. State*, 410 A.2d 500 (Del. 1970).
[27] *Ploof v. State*, 75 A.3d 811,820 (Del. 2013).
[28] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[29] Super. Ct. Crim. R. 61(i)(1)-(4).
[30] Super. Ct. Crim. R. 61(i)(1).
[31] Rule 61(i)(2) bars successive or subsequent motions for postconviction relief unless the movant is able to "pled with particularity" that (i) "new evidence exists that creates a strong inference that the movant is actually innocent in fact of the acts underlying the charges of which he was

Rule 61(i)(3) and (4) provide that any ground for relief that was not previously raised is deemed waived, and any claims that were formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, are thereafter barred.[32] The foregoing bars to relief do not apply to a claim that the court lacked jurisdiction or to a claim that satisfies the pleading requirements of Rule 61(d)(2).[33]

Brown previously raised his claim of an illegal sentence as set forth in Ground Four with this Court. The Court rejected that claim in denying his Motion for Sentence Reduction/Modification on December 6, 2022. As such, Ground Four was previously adjudicated and Rule 61(i)(3) precludes Brown from raising the claim again in this Motion for Postconviction Relief. As such, Ground Four should be summarily dismissed.

The remaining six claims for ineffective assistance of counsel were not previously raised by the Defendant and are not subject to default because they cannot be asserted in proceedings leading to judgment of conviction nor raised on direct appeal.[34] Ineffective assistance of counsel claims are properly brought in a motion for postconviction relief.

---

convicted" or (ii) "a new rule of constitutional law, made retroactive to cases on collateral review by the United States Supreme Court or the Delaware Supreme Court, applies to the movant's case and renders the conviction or death sentence invalid." Super. Ct. Crim. R. 61(d)(2).

[32] Super. Ct. Crim. R. 61(i)(3) and (4).

[33] Super. Ct. Crim. R. 61(i)(3)(A)-(B).

[34] *State v. Jackson*, 2023 WL 4104290, at *4 (Del. Super. Ct.)

### c. Standard of Review Governing Ineffective Assistance of Counsel Claims.

To succeed on an ineffective assistance of counsel claim, a defendant must meet the two-pronged test set forth in *Strickland*[35] by showing that: (1) counsel performed at a level 'below an objective standard of reasonableness'[36] and that, (2) the deficient performance prejudiced the defense.[37] Failure to prove either prong will render a claim insufficient.[38]

Under the first prong, judicial scrutiny is highly deferential. Courts must ignore the distorting effects of hindsight and proceed with a strong presumption that counsel's conduct was reasonable.[39] The *Strickland* Court explained that when deciding an actual ineffectiveness claim, the court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.[40]

Under the second prong, in order to establish prejudice, the movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is

---

[35] *Strickland v. Washington*, 446 U.S. 668 (1984).
[36] *Id*. at 688.
[37] *Id*. at 694.
[38] *Id.* at 688.
[39] *Id.* at 689.
[40] *Id.* at 690.

a probability sufficient to undermine the confidence in the outcome."[41]  In other words, not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding.[42]  The court must consider the totality of the evidence and must ask if the movant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.[43]  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[44]

In the context of a plea challenge, it is not sufficient for the defendant to claim simply that his counsel was deficient.  The defendant must also establish that counsel's actions were so prejudicial that there was a reasonable probability that, but for counsel's deficiencies, the defendant would not have taken a plea but would have insisted on going to trial.[45]  Thus, the Court's analysis often begins with the second prong because it is not necessary "to examine whether an attorney performed deficiently if the deficiency did not prejudice the defendant."[46]

---

[41] *Id.* at 694.

[42] *Id.* at 693.

[43] *Dale v. State,* 2017 WL 443705, * 2 (Del. 2017); *Strickland v. Washington,* 466 U.S. 668, 695-696 (1984).

[44] *Cooke v. State*, 977 A.2d 803, 840 (Del. 2009) (quoting *Strickland*, 466 U.S. at 686).

[45] *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984); *Hickman v. State,* 1994 WL 590495 (Del.) (applying *Strickland* to guilty pleas).

[46] *Ploof v. State*, 75 A.3d 811, 825 (Del. 2013).

The burden of proving ineffective assistance of counsel is on the defendant.[47] Mere allegations of ineffectiveness will not suffice; instead, a defendant must make and substantiate concrete allegations of actual prejudice.[48] With this framework in mind, the Court turns to Brown's claims of ineffective assistance of counsel.

## 1. Video Surveillance Claims.

Grounds One, Two, Five and Six of the Motion for Postconviction Relief are allegations of ineffective assistance of counsel relating to the way defense counsel viewed, handled, and assessed the video surveillance evidence in this case. Brown asserts that defense counsel failed to review any of the video surveillance evidence in the case and, even if he had, counsel's failure to review the video evidence with Brown personally constituted ineffective assistance of counsel.[49] Instead, defense counsel sent a private investigator to review the video surveillance evidence with the Defendant on two separate occasions.[50] Brown asserts that the video surveillance evidence demonstrates that he was not the shooter in the August 17, 2021 incident and that in failing to review the video with him, Brown was unable to point out inconsistencies between the video evidence and the State's case directly to defense counsel.[51] In Ground Six, Brown discusses in some detail what he views as

---

[47] *Oliver v. State,* 2001 WL 1751246 (Del.).
[48] *Younger v. State*, 580 A.2d 552, 556 (Del. 1990).
[49] D.I. 36.
[50] *Id.*
[51] D.I. 41.

inconsistencies between the narrative prepared by the investigating officer and certain time stamps on the video surveillance evidence, inconsistencies which he brought to the attention of his counsel but asserts his counsel ignored.[52]  Brown further claims that defense counsel was pessimistic regarding the success the Defendant would have if he were to go to trial on the basis of the purported inconsistencies in the video evidence.[53]

Brown also asserts that the video the private investigator brought for Defendant's review on the first occasion was different than the video he brought with him on the second occasion.[54]  Specifically, Brown alleges that at the initial viewing of the video with the private investigator the alleged victim can be seen reaching into his waistband, grabbing a firearm, running towards the Defendant and then discharging the firearm.[55]  Brown alleges that the foregoing video evidence was absent at the second viewing of the video.[56]  He further claims that the private investigator acknowledged the differences and stated, "Demetrius, I think you need to go to trial" and "I'm not coming back over here to show any more videos."[57]

In his affidavit, defense counsel denies the allegation that he failed to review the video surveillance evidence and states that he reviewed it multiple times over the

---

[52] D.I. 41.
[53] D.I. 36.
[54] *Id.*
[55] *Id.*
[56] *Id.*
[57] *Id.*

course of several months.[58]   Defense counsel further asserts that he discussed the

contents of the video surveillance evidence at length with the Defendant in person,

over the phone and by Zoom.[59]   Defense counsel concedes that he made

arrangements for the Defendant to review the video with a private investigator on

two occasions but states that the video evidence shown to the Defendant was the

same both times.[60]   Defense counsel further states that he discussed the purported

inconsistencies between the investigative narrative and the time stamps on the video

with the Defendant on several occasions and explained to Brown that, in his

experience throughout many years of practice, time stamps on most videos do not

match up exactly to real time.[61]   Defense counsel further asserts there was no

evidence on the video suggesting that the alleged victim was the actual shooter and

notes that the physical and ballistic evidence was inconsistent with the theory that

the alleged victim was the shooter.[62]

Based upon their contradictory statements, it is abundantly clear to the Court

that defense counsel and Brown viewed the video surveillance evidence quite

differently.   Brown viewed the video surveillance evidence as being exculpatory

---

[58] D.I. 43.

[59] *Id.*

[60] *Id.*

[61] *Id.*

[62] *Id.*   Counsel also asserts that the statements allegedly made to the Defendant by the private investigator were born of frustration "because the investigator felt that Defendant was being combative and unreasonable with him and not listening to what was being said to him.  No one thought that Defendant should have gone to trial in this case."

whereas counsel did not. At core, the two differed on the strength of Brown's case considering the totality of the evidence.

The fact that defense counsel viewed the evidence differently than the Defendant, does not, however, automatically make counsel's assistance ineffective in advising Brown. For Brown to succeed on his ineffective assistance of counsel claims relating to the video surveillance evidence, he must demonstrate that counsel's handling and assessment of the evidence prejudiced his defense. For the reasons that follow, the Court finds that Brown has not demonstrated such prejudice.

In order to access whether the Defendant was prejudiced by counsel's actions, the Court must consider whether Brown would "have received a more favorable verdict relative to the plea into which [he] entered."[63] After a thorough review of the record, the Court cannot conclude that there is a reasonable probability that Brown would have received a more favorable outcome than the plea agreement had he gone to trial on the evidence.

Brown was facing charges for (i) Aggravated Menacing, (ii) Reckless Endangering First Degree, (iii) two counts of Possession of a Firearm During the Commission of a Felony, (iv) Possession of a Firearm by a Person Prohibited, (v) Carrying a Concealed Deadly Weapon, and (vi) two counts of Criminal Mischief. The State had video evidence showing Brown in the area of the shooting at the time

---

[63] *State v. Jackson*, 2023 WL 4104290, at *6 (Del. Super.).

it occurred. The State also possessed ballistic evidence which matched the firearm used at the scene of the crime to a firearm recovered at the residence of one of the Defendant's family members. The record does not suggest nor does the Defendant argue that any of the evidence should have been suppressed or would otherwise have been inadmissible at trial. While the State faced challenges with witness cooperation in this case, there is nonetheless a reasonable probability that the Defendant would have been convicted of at least one of the violent felonies for which he was indicted.[64] If convicted at trial, Brown faced a potential sentence of 20 years of minimum mandatory time and as much as 103 years if convicted of all charges.[65] And, if Brown were determined to be a habitual offender by the Court, he faced a range of 83 years to up to life in prison if convicted of all charges.[66] As the Court's decision on the Defendant's Motion for Sentence Reduction/Modification showed, Brown's prior felony convictions and thus his person prohibited status were not in question.

Based on his assessment of the weight of the evidence against the Defendant, defense counsel concluded that the most prudent defense strategy was to attempt to reduce the significant amount of jail time Defendant faced if convicted at trial by negotiating a plea agreement. Such a strategy was "objectively reasonable" under

---

[64] *See* D.I. 45 at 3; D.I. 58 at 21.
[65] D.I. 43
[66] *Id.*

the circumstances given the significant number of indicted felony charges the Defendant was facing and the strength of the State's evidence. "If an attorney makes a strategic choice 'after thorough investigation of law and facts relevant to plausible options' that decision is 'virtually unchallengeable' and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."[67]

Brown ultimately pled guilty to Aggravated Menacing, Reckless Endangering First Degree and Carrying a Concealed Deadly Weapon and was sentenced to 3 years of Level V time, which is a substantially better result than the potential life imprisonment that Defendant could have faced had he proceeded to trial and been unsuccessful. As such, Brown has failed to demonstrate that counsel's assessment and handling of the video surveillance evidence prejudiced his defense. Accordingly, the Court finds that his claims of ineffective assistance of counsel with respect to the video surveillance evidence are without merit.

### 2. Coerced Guilty Plea; Unfulfilled Plea Agreement

Grounds Three and Seven of the Motion for Postconviction Relief set forth allegations of ineffective assistance of counsel relating to the terms of the plea offer and Brown's acceptance thereof. In Ground Three, Brown claims that defense

---

[67] *Ploof v. State*, 75 A.3d 840, 852 (Del. Super. 2013) (citing *Strickland v. Washington,* 466 U.S. 668, 690-91 (1984).

counsel "switched" the video surveillance evidence and coerced him into taking the guilty plea by telling him that if he did not, he "would do life in jail."[68] In Ground Seven, Brown alleges that defense counsel assured him that he would be sentenced to two years at Level V for pleading guilty to the charge of Carrying a Concealed Deadly Weapon because defense counsel knew the judge well and she was fair and reasonable.[69]

Defense counsel denies that he switched and/or withheld video evidence from the Defendant but admits that he advised Brown on many occasions of the potential sentence he might face if he were convicted at trial.[70] With respect to Ground Seven, counsel denies the assertion made by Brown regarding counsel stating he was in favor with the sentencing judge and states that he never promised or suggested that the Defendant would be sentenced to less than the agreed upon recommendation of three years of Level V time.[71] Counsel notes, however, that Brown was concerned that the Court might sentence him to more time than that agreed upon by the parties.[72] In an effort to assuage those concerns, counsel states that he advised Brown that he had a platonic relationship with a different trial judge (who had been originally scheduled to accept the Defendant's plea) for a number of years.[73] Counsel states

---

[68] D.I. 36.
[69] Id.
[70] D.I. 43.
[71] Id.
[72] Id.
[73] Id.

that he shared that information regarding his relationship with the trial judge to try to assure Brown that he knew her well, that she was reasonable and unlikely to depart from the agreed upon recommendation.[74]

As a threshold matter, it must be noted that Brown has not provided the Court with any actual evidence that defense counsel "switched" or otherwise altered or manipulated the video evidence to his detriment. Nor has he presented a rationale as to why counsel would do so. The Court will not heed such bold-faced assertions.

Brown's contention that defense counsel coerced him into taking the plea is equally unavailing. The statement by defense counsel regarding the likelihood the Defendant "would do life in jail" if convicted of all or only a portion of the charges he was facing accurately reflected Defendant's circumstances. Given the accuracy of the statement, it cannot be reasonably construed as tantamount to coercion. Rather, it shows that counsel was providing competent legal representation. As this Court has held, "it is entirely appropriate for Defendant's counsel to explain that if the offered plea was rejected, Defendant was unlikely to be successful at trial and could receive a possible life sentence."[75]

---

[74] *Id.*
[75] *Skyes v. State*, 2012 1413958, at *5.

Moreover, Defendant's own words in his plea colloquy as well as his executed Plea Agreement and Truth-in-Sentencing Guilty Plea Form bely his allegations as set forth in Grounds Three and Seven of his Motion for Postconviction Relief. "[A] defendant's statements to the Superior Court during the guilty plea colloquy are presumed to be truthful."[76] Where the defendant has signed his Truth-in-Sentencing Guilty Plea Forms and has answered at the plea colloquy that he understands the effects of the plea, the defendant must show by clear and convincing evidence that he did not sign those forms knowingly and voluntarily.[77]

During the guilty plea colloquy, the Defendant gave sworn testimony indicating, *inter alia*, that he (i) freely and voluntarily decided to plead guilty to the charges listed in the plea agreement, (ii) had not been threatened or forced to plead guilty by his counsel, the State or anyone else, and (iii) had not been promised anything not stated in his written plea agreement or otherwise promised what his sentence would be.[78] After some initial hesitation regarding whether he was satisfied with his counsel's representation, the Defendant affirmed that he was knowingly accepting his plea because he understood the risks of proceeding to trial and he was,

---

[76] *Scarborough v. State*, 938 A.2d 644, 650 (Del. 2007).
[77] *Somerville v. State*, 703 A.2d 629, 632 (Del. 1997).
[78] D.I. 58 at 7-9. Brown likewise testified that he understood that the plea agreement was only a recommendation and that the Court was not bound by its terms. *Id.* at 17.

in fact, guilty of the charges to which he pled.[79] Based on Brown's sworn testimony, the Court found his plea to be knowing, intelligent and voluntary.[80]

Absent clear and convincing evidence to the contrary, Brown is bound by his representations during the guilty plea colloquy and the Truth-in-Sentencing Guilty Plea Form.[81] Brown provides no such evidence to the contrary. He does not assert the plea colloquy was defective. Nor does he contend that his answers were untruthful. For these reasons, the Court cannot find defense counsel's alleged statements to be so prejudicial that there was a reasonable probability that, but for counsel's alleged deficiency, the Defendant would not have taken the plea.

---

[79] *Id.* at 10-12, 18-19. During the plea colloquy, Defendant stated "I apologize. Like I said, I'm knowingly accepting this plea today. I can't gamble with my life and face 85 years . . ." *Id.* at 12.
[80] *Id.* at 20.
[81] *Somerville v. State*, 703 A.2d 629, 632 (Del. 1997).

## CONCLUSION

After a thorough review of the record, the Court concludes that the claims set forth in the Motion for Postconviction Relief are either procedurally barred or without merit. Ground Four asserting an illegal sentence is procedurally barred as it was previously raised and adjudicated by this Court. The remaining six claims for ineffective assistance of counsel likewise fail on the merits and are not supported by the record. For all the foregoing reasons, the Defendant's Motion for Postconviction relief should be **DENIED**.

**IT IS SO RECOMMENDED.**

/s/ *Janine M. Salomone*
The Honorable Janine M. Salomone

20