**Tyrone GIBSON, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee**

**No. 207, 2009.**

Supreme Court of Delaware.

Submitted: Sept. 9, 2009.

Decided: Sept. 29, 2009.

8. 805 A.2d 872, 875 n. 6 (Del.2002) (citing the 1973 Criminal Code with commentary).

9. *Weber,* 971 A.2d at 141 n. 4.

Brian J. Chapman, Wilmington, Delaware for appellant.

Timothy J. Donovan, Jr., Department of Justice, Wilmington, Delaware for appellee.

Before STEELE, Chief Justice, HOLLAND and JACOBS, Justices.

STEELE, Chief Justice.

Police responded to a 7:20 p.m. emergency call in February, as Tyrone Gibson forcibly entered a house and attempted to rape the lone occupant. Gibson appeals the trial judge's decisions declaring him competent to stand trial and denying his motion for judgment of acquittal. Gibson claims that the State did not prove that

the burglary[1] occurred at night.[2] Because the trial judge reasonably considered Gibson's competency evaluations and Gibson acted after sunset, we **AFFIRM** Gibson's First Degree Burglary conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. Gibson's Conduct on the Night of February 19, 2006.

On February 19, 2006, Gibson rang the doorbell of a home on West 8th Street in Wilmington, DE. A minor girl opened the door and responded to his questions until Gibson left. Gibson returned approximately five minutes later and, as he requested to use the phone, forced his way into the house. He demanded money and began to undress both himself and the house's lone occupant.

Gibson did not know that in the meantime, the girl had already dialed 911. Gibson took a cordless phone from her and put it in his pocket. At 7:20 p.m., a police dispatcher reported a possible burglary or rape in progress. Wilmington Police officers arrived on the scene and apprehended Gibson at 7:47 p.m. Gibson does not dispute these facts or the witnesses' testimony that these events occurred after dark.

### 2. Gibson's Pre-Trial Competency Classes, Evaluations, and Hearings.

The trial judge delayed Gibson's trial for nearly two years, during which time four experts and Gibson's lawyer reported on his competence to stand trial after six different occasions. The trial judge declared Gibson competent to stand trial on June 16, 2008. In the two days before trial, a psychologist and Gibson's lawyer reported to the trial judge that he was competent and "calm." The following facts detail this two-year competency determination.

The trial judge granted a continuance of Gibson's original trial date, September 14, 2006, to evaluate concerns about his competency. In an October 30 conference, Dr. John O'Brien, the defense's expert psychiatrist, advised the trial judge that Gibson was incompetent to stand trial. On November 6, the trial judge transferred Gibson to the Delaware Psychiatric Center (DPC), where he attended competency classes.

After Gibson's transfer, the State retained psychiatrist Dr. Stephen Mechanick to re-evaluate Gibson's competency. Dr. Mechanick testified, at a second competency hearing on March 12, 2007, that although Gibson was mildly mentally retarded, he was capable of assisting his attorney in the preparation of his defense.

On June 1, the court held a third competency hearing. Dr. O'Brien testified that he agreed with Dr. Mechanick's diagnosis that Gibson was mentally retarded, but concluded that Gibson's level of intellectual functioning would prohibit him from participating fully and consistently in his defense. Dr. Mechanick resumed the stand, and testified that he had spoken with the psychologist who runs the DPC competency classes, Charlotte Selig, Psy.D., who was of the view that Gibson was competent to stand trial.

The trial judge decided to hear directly from Selig and held a fourth competency hearing on April 1, 2008. Selig character-

1. The jury convicted him of First Degree Burglary, as well as First Degree Attempted Rape, Possession of a Deadly Weapon During the Commission of a Felony, and Second Degree Attempted Robbery, but Gibson has not appealed those other convictions.

2. 11 *Del. C.* § 826(a) (listing, as an element of First Degree Burglary, that the conduct occur "at night").

ized Gibson as uncooperative, but agreed with Dr. Mechanick's determination. Dr. Robert Thompson, a psychiatrist with expertise on the ability of the mentally retarded to stand trial, also testified after having had discussions with Gibson about his case and the criminal justice system in general. Dr. Thompson diagnosed Gibson as mildly mentally retarded with drug dependency and anti-social personality disorder, but competent to stand trial.

On June 16, the trial judge ruled Gibson competent to stand trial. The following day, the trial judge ordered Gibson transferred to the Young Correctional Institute. On August 28, defense counsel informed the trial judge that Gibson had become belligerent and had threatened him. The trial judge ordered Gibson's immediate transfer to the DPC for an emergency psychiatric evaluation.

On September 2, the trial judge informed counsel that a DPC psychologist had performed a fifth evaluation of Gibson, and found him competent to stand trial and not in need of medication. Counsel, however, moved to withdraw.

The trial judge held a pre-trial conference, on September 3, at which defense counsel stated that Gibson had become "very calm," was "[not] hostile or aggressive," and "understood most everything as I was going through speaking with him." Counsel also assured the trial judge that he could effectively represent Gibson despite his earlier motion to withdraw. At no time during this pre-trial conference did Gibson's counsel contend that Gibson was not competent to stand trial.

### 3. Gibson's Motion for Acquittal; Judgment of Final Conviction.

The case went to trial the next day, on September 4. At the close of the State's case-in-chief, Gibson moved for a judgment of acquittal on the First Degree Burglary charge, arguing that the State had failed to prove that the burglary took place at night, as required by 11 *Del. C.* § 826(a). The trial judge reserved decision. On September 8, the jury convicted Gibson on all four charges. The trial judge never formally ruled on the motion for a judgment of acquittal, but implicitly denied the motion when she sentenced Gibson on all four charges on March 13, 2009. Gibson appeals from those sentences.

### STANDARD OF REVIEW

■ We review a trial judge's competency determination *de novo*, to determine whether the State has established Gibson's competency by a preponderance of the evidence.[3] We will defer to the trial judge's findings, when the record supports them.[4]

■ We also review the denial of Gibson's motion for a judgment of acquittal *de novo*, to determine whether a rational finder of fact, viewing the evidence in the light most favorable to the State, could find him guilty beyond a reasonable doubt.[5] When reviewing the evidence, we do not distinguish between direct and circumstantial evidence.[6]

### ANALYSIS

#### 1. The Record Supports the Trial Judge's Declaring Gibson Competent.

■ Gibson argues that the trial judge erroneously found him competent

3. *Diaz v. State*, 508 A.2d 861, 863–64 (Del. 1986).

4. *Bailey v. State*, 490 A.2d 158, 167 (Del. 1983).

5. *Hopkins v. State*, 893 A.2d 922, 931 (Del. 2006).

6. *Skinner v. State*, 575 A.2d 1108, 1121 (Del. 1990).

and again erred by allowing him to stand trial, several months later. We determine competency based on "whether or not the defendant has sufficient present ability to consult with his lawyer rationally and whether he has a rational as well as a factual understanding of the proceedings against him."[7] Competency does not necessarily turn upon the absence or presence of any particular factor.[8]

The trial judge declared Gibson competent after hearing the testimony of four experts. The only dissenting expert evaluated Gibson more than a year before trial and his initial evaluation occurred before Gibson had completed DPC competency classes. During the two days before trial, the trial judge heard, first, from a DPC psychologist who found Gibson competent and, second, from Gibson's lawyer who reported that Gibson was calm and had understood their discussions. Gibson's lawyer also assured the trial judge that he could effectively represent Gibson, despite having previously moved to withdraw.

It appears from the evidence that Gibson was competent to stand trial and participate in his own defense. We can say with even greater certainty that a reasonable evidentiary basis existed to support the trial judge's determination. The trial judge continued Gibson's trial date, ordered him to attend competency classes, heard from four experts who had direct contact with Gibson, made a deliberate determination consistent with the more recent and more numerous evaluations, and reconfirmed that decision within 48 hours of trial. Accordingly, we affirm the trial judge's finding that Gibson was competent to stand trial.

## 2. Sufficient Evidence Exists to Show the Burglary Occurred after Sunset.

■ Gibson also asserts that the State did not satisfy the 'at night' element of First Degree Burglary. The State argues that the 7:20 p.m. emergency dispatch and the 7:47 p.m. police arrival place the conduct well beyond a winter sunset, which any member of the jury would have known. 11 *Del. C.* § 829(f) defines "night" as "a period between 30 minutes after sunset and 30 minutes before sunrise."

Gibson claims that *Blankenship v. State*,[9] requires the State to prove the exact times of sunset and the criminal conduct. In *Blankenship*, the victim testified that the burglary occurred at 5:12 a.m., and the defendant's father testified that when Blankenship returned home at 5:45 a.m., the sun was just beginning to rise.[10] Unlike Gibson, Blankenship acted on the cusp of statutorily defined 'night time,' within only a few minutes of sunrise.

Here, the police responded to Gibson's actions at 7:20 p.m. and took Gibson into custody at 7:47 p.m. Although our determination turns on the facts most favorable *to the State,* taking the facts most favorable *to Gibson* illustrates how far this is from a close question. Assuming a 6:00 p.m. sunset, the 7:20 p.m. dispatch still occurred 50 minutes after the 30–minute statutory grace period ended. When we assume times favorable to the State—5:30 p.m. sunset and conduct that continued until 7:47 p.m.—Gibson's conduct extends 107 minutes into statutorily defined night time. Based upon the testimony in this case about darkness, the time of sunset, and the time of the police responses, circumstantial

7. *Williams v. State,* 378 A.2d 117, 119 (Del. 1977).

8. *State v. Shields,* 593 A.2d 986, 1005 (Del.Super.1990).

9. 447 A.2d 428, 432–33 (Del.1982).

10. *Id.* at 433.

evidence strongly supports the determination that the burglary occurred at night. This is not merely twilight, nor is it a close call.

*Blankenship* does not create a blanket requirement to prove the official times of sunset or sunrise, in order to convict a defendant of First Degree Burglary. Rather, that decision exemplifies the close call that prosecutors and juries sometimes face, when dealing with First Degree Burglary's precise temporal requirement. Because the facts in the present case do not involve any such close call, we affirm the judgment of conviction.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the trial judge's judgment of conviction.