IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| LYNELL TUCKER, | § | |
| | § | No. 685, 2013 |
| Defendant Below- | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware in and |
| v. | § | for New Castle County |
| | § | |
| STATE OF DELAWARE, | § | No. 1109012280A |
| | § | |
| Plaintiff Below- | § | |
| Appellee. | § | |

Submitted: November 19, 2014
Decided: November 21, 2014

Before **STRINE**, Chief Justice, **HOLLAND**, and **RIDGELY**, Justices.

*O R D E R*

On this 21st day of November 2014, it appears to the Court that:

(1) Defendant-Below/Appellant Lynell Tucker ("Tucker") appeals from a jury conviction in the Superior Court of first degree murder and possession of a firearm during the commission of a felony ("PFDCF"), as well as a subsequent Superior Court order sentencing him to life imprisonment without parole. Tucker raises one claim on appeal. Tucker argues that the State failed to establish by a preponderance of the evidence that he was mentally competent to stand trial. We find that the trial court did not err in concluding that Tucker was competent to stand trial. Accordingly, we affirm.

1

(2) The charges against Tucker arose out of the September 14, 2011 shooting death of Dominique Helm ("Helm"). Police arrested Tucker for Helm's murder in October 2011. Tucker was indicted on charges of first degree murder, PFDCF, and possession of a firearm by a person prohibited ("PFBPP"). In April 2012, Tucker's counsel filed a psychiatric report in which Mandell Much, Ph.D ("Dr. Much") opined that Tucker was not competent to stand trial. Dr. Much tested Tucker's competency by administering the MacArthur Competence Assessment Tool-Criminal Adjudication ("MacCAT-CA"). Dr. Much concluded that Tucker "could not articulate, in his own words, an appreciation of charges or the decision making skills required to act in one's best interest in a hypothetical case scenario."[1]

(3) In response to Dr. Much's evaluation, the State submitted the expert reports of Stephen Mechanick, M.D. ("Dr. Mechanick") and Douglas S. Schultz, Psy.D ("Dr. Schultz"). Both doctors opined that Tucker was competent to stand trial. The State's experts provided a number of reasons for finding Tucker competent. Specifically, the experts found that: (1) Tucker's lower IQ scores and poor test results were due to his lack of effort or motivation, (2) Tucker was previously found to be competent by other doctors, and there had been no intervening event since that time that would have caused Tucker's capacity or competency to deteriorate, (3) Tucker had no psychiatric disorder that rendered

_____

[1] Appellant's Op. Br. App. at A29.

2

him incompetent, and there was no evidence he suffered from psychosis, delusions, or hallucinations, (4) Tucker gave composed and lucid testimony at his 2007 trial, and (5) Tucker had Borderline Intellectual Functioning—an IQ between 71 and 84. Additionally, Dr. Mechanick and Dr. Schultz distinguished their evaluations of Tucker from Dr. Much's evaluation by pointing out that Dr. Much relied on the MacCAT-CA, "which employs the use of a hypothetical case scenario, rather than asking questions about the defendant's actual case."[2]

(4) The trial court held three days of competency hearings, in which the court heard testimony and reviewed the doctors' respective reports and exhibits. The trial court concluded that the State had met its burden and Tucker was competent to stand trial. A ten day jury trial was held and Tucker was found guilty of first degree murder and PFDCF.[3] Tucker was sentenced to life imprisonment without parole on the first degree murder charge and five years imprisonment at Level V for the PFDCF conviction.[4] This appeal followed.

(5) "We review a trial judge's competency determination *de novo*," to determine whether the State has established Tucker's competency by a preponderance of the evidence.[5] "We will defer to the trial judge's findings, when

---

[2] Appellant's Op. Br. App. at A91.
[3] Prior to trial, the PFBPP charge was severed. Appellant's Op. Br. App. at A12.
[4] Appellant's Op. Br. Ex. B.
[5] *Gibson v. State*, 981 A.2d 554, 557 (Del. 2009) (citing *Diaz v. State*, 508 A.2d 861, 863-64 (Del. 1986)).

the record supports them."[6]  "We determine competency based on 'whether or not the defendant has sufficient present ability to consult with his lawyer rationally and whether he has a rational as well as a factual understanding of the proceedings against him.'"[7]  The United States Supreme Court has also added the requirement that a defendant be able to "assist in preparing his defense."[8]  "Competency does not necessarily turn upon the absence or presence of any particular factor."[9]  In *State v. Shields*, the Superior Court found that "the competency threshold is quite low.  It is neither very demanding nor exacting.  The standard by which a defendant's competency is measured is not that of the reasonable person but rather of the average criminal defendant."[10]

---

[6] *Id.* (citing *Bailey v. State*, 490 A.2d 158, 167 (Del. 1983)).

[7] *Id.* at 558 (quoting *Williams v. State*, 378 A.2d 117, 119 (Del. 1977)).   This rule of law is codified in 11 *Del. C.* § 404(a), which states:

> Whenever the court is satisfied, after hearing, that an accused person, because of mental illness or serious mental disorder, is unable to understand the nature of the proceedings against the accused, or to give evidence in the accused's own defense or to instruct counsel on the accused's own behalf, the court may order the accused person to be confined and treated in the Delaware Psychiatric Center until the accused person is capable of standing trial. However, upon motion of the defendant, the court may conduct a hearing to determine whether the State can make out a prima facie case against the defendant, and if the State fails to present sufficient evidence to constitute a prima facie case, the court shall dismiss the charge. This dismissal shall have the same effect as a judgment of acquittal.

[8] *Drope v. Missouri*, 420 U.S. 162, 171 (1975).

[9] *Gibson*, 981 A.2d at 558 (citing *State v. Shields*, 593 A.2d 986, 1005 (Del. Super. 1990)).

[10] *Shields*, 593 A.2d at 1012–13 (Del. Super. 1990).

(6) Tucker argues that the trial court erred in finding that the State met its burden of establishing by a preponderance of the evidence that he was competent to stand trial. Tucker contends that the weight of the evidence supported a finding that he was incompetent to stand trial and that the trial court improperly credited the reports of the State's experts over Dr. Much's report.

(7) Tucker's claim is unpersuasive in light of the entire record. This appeal hinges on the opinions of three experts, two of which found Tucker competent to stand trial. Reversal is not warranted merely because the trial court found the State's experts to be more credible than Tucker's expert. The extensive reports of Dr. Mechanick and Dr. Schultz satisfy the State's burden of establishing competence by a preponderance of the evidence and support the trial court's finding that Tucker was competent to stand trial and participate in his own defense.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ Henry duPont Ridgely
Justice

5