IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ISMAR H. CHUN CASTRO, | § | |
| | § | No. 135, 2024 |
| Defendant Below, | § | |
| Appellant, | § | Court Below—Superior |
| | § | Court of the State of |
| v. | § | Delaware |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID No. S2012004476 |
| | § | |
| Appellee. | § | |
| | § | |

Submitted: September 3, 2025
Decided: December 2, 2025

Before **VALIHURA**, **TRAYNOR**, and **GRIFFITHS**, Justices.

Upon appeal from the Superior Court of the State of Delaware. **AFFIRMED.**

Santino Ceccotti, Esq., DELAWARE OFFICE OF DEFENSE SERVICES, Wilmington, Delaware, *for Appellant Ismar H. Chun Castro.*

Julie M. Donoghue, Esq. (*argued*), Kenneth Nachbar, Esq., DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware, *for Appellee State of Delaware.*

**GRIFFITHS**, Justice:

Ismar Chun-Castro appeals his criminal convictions for multiple counts of rape, sexual child abuse, and unlawful sexual contact on the ground that he was not competent to stand trial. His trial counsel raised concerns about his competency before trial. The court ordered that Chun-Castro undergo a psychiatric evaluation to gauge his competency. The evaluation revealed that Chun-Castro had a rational understanding of the proceedings and charges against him but lacked competency to stand trial due to his unwillingness to participate in his own defense. The court then ordered, at the parties' request, that Chun-Castro participate in a competency restoration program. A second psychiatrist evaluated Chun-Castro after he completed the program. The second evaluation revealed that his condition had improved and that he was able to assist with his defense. Having considered the results of both evaluations, the Superior Court determined Chun-Castro competent and proceeded to trial. At trial, a Superior Court jury convicted Chun-Castro of all charges submitted to them.

Chun-Castro makes two claims on appeal. First, he contends that the trial court violated his due process rights by ruling on competency without first making requisite factual findings. And second, Chun-Castro argues that the record, viewed as a whole, suggests that he was not competent to stand trial. We reject both arguments and affirm the Superior Court's ruling on competency.

2

## BACKGROUND

On March 23, 2021, the State of Delaware filed an initial indictment against Ismar Chun-Castro for engaging in criminal sexual intercourse with a minor.[1] The indictment, as amended on December 8, 2023, charged Chun-Castro with two counts of first-degree rape; six counts of first-degree sexual abuse of a child by a person in a position of trust, authority or supervision; and eight counts of first-degree unlawful sexual contact.[2] Before trial, Chun-Castro's trial counsel ("Counsel") raised concerns about Chun-Castro's mental health and competency.[3]

Counsel first expressed his concern at a February 2022 teleconference with the trial court.[4] According to Counsel, Chun-Castro seemed to understand the nature of the legal proceedings and the charges against him, but his ability to participate in his own defense was questionable.[5] Counsel stated:

> I have told [Chun-Castro] that he has two options: [h]e can try to work out a plea where he has a chance of getting out of jail or go to trial and never get out . . . . [T]ypically when I deal with people, sometimes they may have unrealistic expectations of a plea I can get, but at least, that's a rational thought process . . . . [Chun-Castro] doesn't have a thought process . . . I don't think he falls under the incompetent area . . . of not understanding how the process works. I think he understands how the

---

[1] App. to Appellant's Opening Br. at A1–2 [hereinafter "A_"] (Super. Ct. Crim. Dkt. [hereinafter "Dkt."]).

[2] A13–19 (Am. Indictment by Grand Jury).

[3] D.I. 33, Appellant's Opening Br. 3–6 (Feb. 14, 2025) [hereinafter "Opening Br."].

[4] *Id.* at 3.

[5] A23 (Tr. of Teleconf. dated Feb. 17, 2022, at 4:14–15) [hereinafter "Feb. 2022 Tr."].

process works, but I would view this as he is not able to, at this point, engage in his own defense.[6]

Counsel then requested that the court order a psychological evaluation of Chun-Castro.[7] The Superior Court granted the request and,[8] on September 29, 2022, Dr. Contance Mesiarik evaluated Chun-Castro at the Delaware Psychiatric Center and prepared a report.[9] Dr. Mesiarik observed that Chun-Castro "demonstrated a generally adequate understanding of criminal proceedings, as well as his personal involvement in these proceedings."[10] However, Dr. Mesiarik also noted that Chun-Castro "made statements that were concerning . . . . [H]e repeatedly stated he would not defend himself against the charges[.]"[11] Because of Chun-Castro's unwillingness to participate in his own defense, Dr. Mesiarik concluded that he was incompetent to stand trial.[12] In light of Dr. Mesiarik's report, the Superior Court advised Counsel to "notify the Court within 10 days whether a competency hearing is required. If no notification [is received], the Court will assume [a] hearing is unnecessary[.]"[13] Counsel did not contact the court to request the competency

---

[6] A22–23 (Feb. 2022 Tr. 3:15–4:15).

[7] Opening Br. 4.

[8] *Id.*

[9] *See* A33–37 (Forensic Mental Health Exam. dated Nov. 18, 2022) [hereinafter "2022 Exam."].

[10] A36 (2022 Exam. at 6).

[11] A37 (2022 Exam. at 7).

[12] *Id.*

[13] A4 (Dkt. No. 30).

4

hearing.[14]  Instead, Counsel and the State agreed that attempts should be made to restore Chun-Castro's competency.[15]  At the parties' request, the court issued an order transferring Chun-Castro to the Delaware Psychiatric Center where he would undergo a competency restoration program.[16]

At the end of the program, Chun-Castro underwent a second psychiatric evaluation.  Dr. Jonathan P. Tan performed the evaluation and prepared a report.[17] Dr. Tan observed that Chun-Castro "[had] actively participated in the competency restoration program[.]"[18]  And consistent with Dr. Mesiarik's earlier opinion, Dr. Tan confirmed that Chun-Castro "appear[ed] to have a rational and factual understanding of his charges[.]"[19]  Dr. Tan also observed that, after the restoration program, Chun-Castro "said he [had] confidence in his lawyer and that he [would] actively participate in this legal defense with his lawyer."[20]  Dr. Tan's ultimate conclusion

---

[14] *See generally* A1–12 (Dkt.).

[15] D.I. 35, Appellee's Answering Br. 7 (Mar. 7, 2025) [hereinafter "Answering Br."].

[16] *Id.*; *see also* A5 (Dkt. No. 35).

[17] *See* A48–56 (Forensic Mental Health Exam. dated Apr. 5, 2023) [hereinafter "2023 Exam."].

[18] A55 (2023 Exam. at 8).

[19] *Id.*

[20] *Id.*

was that "within a reasonable degree of psychological certainty . . . Mr. Ismar H. Chun-Castro is <u>competent to stand trial</u> at this time."[21]

Upon receipt of Dr. Tan's report, the Superior Court scheduled a teleconference with the parties.[22]  At the teleconference, Counsel re-asserted his belief that Chun-Castro lacked competency to stand trial despite the most recent report.[23]  Contrary to this belief, however, Counsel also stated:  "I don't have a problem with [Chun-Castro] doing a plea."[24]  This remark from Counsel prompted the court to remind Counsel that a person must be competent to accept a plea offer, and then suggested that Chun-Castro undergo a third evaluation if Counsel believed that Dr. Tan's conclusion was unreliable.[25]  Counsel explained that he was unsure as to whether a third evaluation was a viable option.[26]  Given that the most recent report found Chun-Castro competent, the State requested that the court set a trial date.

---

[21] *Id.* (emphasis in original).  Specifically, Dr. Tan applied the "McGarry questions" as used in *State v. Shields* to thoroughly assess Chun-Castro's competency.  *See* 593 A.2d 986, 1000 n.23 (Del. Super. 1990).

[22] A5 (Dkt. No. 38).

[23] A58–59 (Tr. of Teleconf. dated Apr. 26, 2023, at 2:17–3:4) [hereinafter "Apr. 2023 Tr."].

[24] A59 (Apr. 2023 Tr. 3:7–8).

[25] A59–60 (Apr. 2023 Tr. 3:23–4:12).

[26] A61–62 (Apr. 2023 Tr. 5:16–6:7).  Chun-Castro's trial counsel explained that a third evaluation might not be viable due to shortage of funding, as: (a) Chun-Castro's family stopped funding his defense after they learned that he had confessed to the sexual offenses charged; (b) the State was unlikely to sponsor another evaluation given the most recent report opined that Chun-Castro's competency had been successfully restored; and (c) funding from conflict counsel was not guaranteed.  *Id.*

Counsel conceded that the Superior Court could schedule a trial date but asked that it not be "too soon" so he could further confer with his client.[27] The court set the case for trial but invited Counsel to "bring [any concerns] to [the court's] attention" "if there [were] any other problems."[28] Counsel did not raise the issue again. Counsel did, however, inform the court on July 28, 2023, that all efforts to assist his client in accepting a plea offer were unsuccessful, and that he was ready for trial.[29]

At trial, the State dropped six charges, and a jury convicted Chun-Castro of the remaining ten offenses.[30] The Superior Court sentenced Chun-Castro to 216 years of Level V imprisonment, with credit for three and a half years for time served.[31] Chun-Castro filed this appeal, claiming that he was not competent to stand trial.

---

[27] *Id*. Chun-Castro's trial counsel advised the court that Chun-Castro lacked funding for a third evaluation, unless the State was willing to sponsor one. The State requested that the court set a date for trial. The court turned to ask Chun-Castro's trial counsel: "[A]nything you want to do? Do you want to take some time and talk to your client about it or do you want us to go ahead?" The trial counsel responded:

> Your honor, I guess as long as we get far enough time out. I do think I should talk to my client. I will tell the Court that. . . there's no way. . . we can hire an expert ourselves. If I talk to [Chun Castro] and I have more concerns, I may have to figure out with conflict counsel if there's a way to hire an expert to do it. . . maybe if we just get dates that aren't too soon, give me a couple months so I could talk to [Chun-Castro] and figure out what to do.

*Id.*

[28] A62 (Apr. 2023 Tr. 6:17–19).

[29] A72–74 (Tr. of Teleconference dated Jul. 28, 2023, at 7:20–9:3) [hereinafter "Jul. 2023 Tr."].

[30] A1, A9 (Dkt. at 1, 9) (the jury convicted Chun-Castro of two counts of first-degree rape, six counts of child abuse, and two counts of unlawful sexual contact).

[31] A139–40 (Tr. of Sent'g Hearing dated March 8, 2024, at 15:13–16:18).

**STANDARD OF REVIEW**

A competency determination involves both legal and factual components. We will review the legal standard applied by the trial court *de novo*.[32] With regard to the Superior Court's factual findings, "[w]hen a trial court rules on a defendant's competency to stand trial in the first instance, if its finding is supported by the evidence, such finding is entitled to deference."[33]

**ANALYSIS**

On appeal, Chun-Castro raises two claims. First, Chun-Castro contends that the Superior Court violated his right to due process by failing to base its competency ruling on factual findings.[34] And second, Chun-Castro argues that the record, viewed in its entirety, suggests that he was not competent to stand trial.[35] We reject both arguments and affirm the Superior Court's ruling on Chun-Castro's competency.

A. *The Superior Court Based its Ruling on an Adequate Factual Record*

Chun-Castro argues that the court violated his due process rights when it "did not adequately create a record and explain its legal rationale for denying [his] competency challenge."[36] We disagree. We acknowledge the principle that "the

---

[32] *See Cooke v. State*, 338 A.3d 418, 459 n.191 (Del. 2025).

[33] *Id.*

[34] Opening Br. 14.

[35] *Id*. at 15.

[36] *Id.* at 14.

8

conviction of an accused person while he is legally incompetent to stand trial violates due process of law."[37]  "Due process requires that a defendant be competent to stand trial, and our criminal code recognizes that the accused who is not competent should not stand trial."[38]  Specifically, under 11 *Del. C.* § 404(a),

> [w]henever the court is satisfied, after hearing, that an accused person, because of mental illness or serious mental disorder, is unable to understand the nature of the proceedings against the accused, or to give evidence in the accused's own defense or to instruct counsel on the accused's own behalf, the court may order the accused person to be confined and treated in the Delaware Psychiatric Center until the accused person is capable of standing trial.[39]

Furthermore, "[o]ur case law mandates that a judge make factual determinations and supply a legal rationale for a judicial decision as a matter of law."[40]  And "[a]s we have acknowledged before, [w]e are mindful of the tremendous time burdens on our trial courts.  But it is part of a trial judge's adjudicative responsibilities to state the reasons for his action, no matter how briefly."[41]

---

[37] *Harris v. State*, 410 A.2d 500, 502 (Del. 1979).

[38] *Cooke*, 338 A.3d at 457 (citing *Pate v. Robinson*, 383 U.S. 375, 378 (1966)).

[39] *Id.* (citing 11 *Del. C.* § 404(a)).

[40] *Holden v. State*, 23 A.3d 843, 846 (Del. 2011).

[41] *Id.* at 846–47 (alteration in original) (quoting *Husband M. v. Wife D.*, 399 A.2d 847, 848 (Del. 1979)) (internal quotation marks omitted).

The record before us shows that the Superior Court consulted multiple pieces of evidence before determining Chun-Castro's competency.[42] During the April 26, 2023 teleconference, before setting the case for trial, the Superior Court stated: "[t]here was a prior [] report that found [Chun-Castro] not competent and there is a more recent one that we just received stating that [Chun-Castro] is now competent."[43] This evidences that the court based its subsequent competency ruling on the findings contained in the Mesiarik and Tan reports. Both reports stated that Chun-Castro had a rational understanding of the proceedings and charges against him; and the Tan report concluded that Chun-Castro's inability to engage in his own defense had been resolved through the restoration program. We hold that the Superior Court satisfied its responsibility to briefly "state the reasons for [its] action" when it determined Chun-Castro's competency based on the reports.[44]

### B. The Record Supports the Superior Court's Ruling that Chun-Castro was Competent to Stand Trial

Next, Chun-Castro argues that the record, viewed in its entirety, does not support the Superior Court's ruling that Chun-Castro was competent to stand trial. We disagree. "[F]rom a legal standpoint, the competency threshold is quite low."[45]

---

[42] *See, e.g.*, A39–40 (Tr. of Teleconf. dated Dec. 2, 2022, at 2:18–3:18) (the trial court considering Dr. Mesiarik's report); A58 (Apr. 2023 Tr. 2:10–15) (the trial court considering Dr. Tan's report).

[43] A58 (Apr. 2023 Tr. 2:10–15).

[44] *See Holden*, 23 A.3d at 846–47.

[45] *Shields*, 593 A.2d at 1012. We have repeatedly held that "the competency threshold is quite low. It is neither very demanding nor exacting. The standard by which a defendant's competency is

10

To be competent to stand trial, a defendant must have "sufficient present ability to consult with his lawyer," "a rational as well as a factual understanding of the proceedings against him,"[46] and be able to "assist in preparing his defense."[47]  In evaluating a criminal defendant's competency to stand trial, "[w]e will defer to the trial judge's findings, when the record supports them."[48]

Chun-Castro concedes that a person's competency to stand trial can be measured using the "*McGarry* factors,"[49] which was precisely the test adopted by Dr. Tan.  Dr. Tan's *McGarry* findings are summarized as follows:

- Ability to appreciate the charges:  Chun Castro knew that he was charged with 17 offenses and was able to tell the difference between felony and misdemeanor charges.  He acknowledged that "my charges are felonies.  Serious charges."

---

measured is not that of the reasonable person but rather of the average criminal defendant." *Cooke*, 338 A.3d at 456–57.  Naturally, under the "quite low" standard, to be competent to stand trial, a defendant needs not understand particular legal terminologies or specific defense techniques, which usually requires professional legal training to fully comprehend.  Here, Chun-Castro argues that he was unable to assist in his own defense because he could not understand the term "*Alford* plea" or describe what techniques he would adopt to defend himself in court.  Opening Br. 6.  This argument is unconvincing for two reasons.  First, the argument misreads Dr. Tan's report.  Dr. Tan did not observe that Chun-Castro was unable to understand any defense strategy, but reported that Chun-Castro "declined to offer his current defense strategy, saying he would discuss it with his lawyer.  This . . . demonstrate[d] [Chun-Castro's] rational understanding of the limits of confidentiality."  A55 (2023 Exam. at 8).  Second, the argument—that a defendant must be able to specify his trial strategy to be competent to stand trial—purports to lift the standard of competency too high.

[46] *Gibson v. State*, 981 A.2d 554, 558 (Del. 2009) (citation omitted) (internal quotation marks omitted); *see also Cooke,* 338 A.3d at 456.

[47] *Tucker v. State*, 105 A.3d 990, 2014 WL 7009954, at *2 (Del. Nov. 21, 2014) (TABLE) (citation omitted).

[48] *Gibson*, 981 A.2d at 557.

[49] *See* Opening Br. 12.

11

- Appreciation of range and nature of possible verdicts and penalties: Chun-Castro understood that he would face more than ten years of incarceration if determined guilty.

- Appraisal of evidence and likely outcome of a trial: Chun-Castro stated that his lawyer had explained to him the likely outcome "very well." Chun-Castro also stated that he believed his fate was in God's hands, and that he would accept any verdict or sentence imposed.

- Ability to appraise the roles of the various participants in courtroom proceedings: Chun-Castro correctly identified the role of the prosecutors and that of his defense attorney. He also correctly stated that the jury was charged with rendering a verdict, and that the judge would decide sentencing.

- Understanding of the role of witnesses and ability to challenge witnesses: Chun-Castro correctly recognized that witnesses would present testimonies against or for him, and that his lawyer would cross-examine the witnesses. Chun-Castro also knew that he should promptly notify his lawyer if he thought a witness was lying.

- Capacity to testify relevantly: Chun-Castro was aware that he could testify in court but would need to discuss this with his lawyer as a part of his defense strategy.

- Understanding of court procedure, including plea bargains: Chun-Castro understood the concepts of "guilty plea" and "not-guilty plea," but could not comprehend "no-contest plea" (*Alford* plea). Moreover, Chun-Castro understood that if he engaged in "plea bargaining" and reached a "plea deal," his lawyer "[would] try to find [him] less time" for his charges.

- Capacity to relate to an attorney and disclose pertinent facts surrounding the offense: When Dr. Mesiarik first evaluated Chun-Castro, Chun-Castro believed that God would help him get released and therefore he need not assist in his defense. Dr. Tan evaluated Chun-Castro after the restoration program. After the program, Chun-Castro stated that he would tell anything he knew to his lawyer, and that his lawyer was working toward his best interests.

- Ability to appraise legal defenses and plan legal strategy: "[Chun-Castro] declined to offer his current defense strategy, saying he would discuss it with his lawyer. This again demonstrates his rational understanding of the limits of confidentiality."

- Ability to manage behavior and withstand stress during courtroom proceedings: Chun-Castro recalled that his lawyer instructed him to act calmly in court, and understood that disturbing court proceedings would have serious consequences. He also knew that if he felt over-stressed in court, he should notify his lawyer promptly.

- Manifestations of self-defeating vs. self-serving motivation: "Mr. Chun-Castro, while stating that he would accept the outcome of his case as being the will of God, did not express any self-defeating motivation at all during the interview."[50]

Based on the foregoing, we find that the record contained sufficient evidence to support the trial judge's determination that Chun-Castro had met the low threshold of competency and could move forward with trial.

Still, Chun-Castro argues that "a judge is to consider the totality of the circumstances when making a competency determination," instead of constraining consideration to psychiatric reports.[51] Chun-Castro claims that we must consider "the fact that [he] continuously turned down plea offers from the State despite confessing to the allegations and facing what amounted to a life sentence," which, according to Chun-Castro, demonstrates that "[h]e was unable to weigh any defense

---

[50] A53–55 (2023 Exam. at 6–8).

[51] Opening Br. 11 (citing *State v. Williamson*, 2013 WL 268981, at *7 (Del. Super. Jan. 23, 2013)).

options presented to him by counsel."[52]  We are unpersuaded by Chun-Castro's reasoning.  The trial judge was made aware of the rejected plea offers; Counsel informed the court of the rejected pleas offers both before and after competency had been restored.  Chun-Castro was aware of the advantages of pleading guilty, but knowingly and voluntarily elected to turn them down.[53]  In reviewing the record in its entirety, including Chun-Castro's rejection of plea offers, we conclude that the trial court's determination is supported by the evidence.

## CONCLUSION

The Superior Court's judgment is AFFIRMED.

---

[52] *Id.* at 18.

[53] A52 (2023 Exam. at 5) (Chun-Castro stating to Dr. Tan that "[i]f God means I must stay in jail for 10 years, that is right.  If I lie, then God will not be able to help me . . . For what I did, I really really turned my life to God."); A54 (2023 Exam. at 7) (Dr. Tan observing that Chun-Castro understood the advantages of pleading guilty).