# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,      )
                      )
         Plaintiff,      )
                      )
    v.                   )
                      )    ID. No. 2407012475
                      )
                      )
JOSHUA J. TENAGLIA      )
                      )
         Defendant.     )

Submitted: January 23, 2026
Decided: April 30, 2026

## COMMISSIONER'S REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF SHOULD BE DENIED

Joseph S. Grubb, Esquire and Barzilai K. Axelrod, Esquire, Deputy Attorneys General, Delaware Department of Justice, Wilmington, Delaware, Attorneys for the State.

Defendant Joshua J. Tenaglia, Howard R. Young Correctional Institute, Wilmington, Delaware, *pro se*.

SALOMONE, Commissioner

This 30th day of April 2026, upon consideration of the *pro se* Motion for Postconviction Relief filed by Defendant Joshua J. Tenaglia ("Defendant" or "Tenaglia");[1] the Affidavit in Response to Defendant's Motion for Postconviction Relief filed by trial counsel ("Trial Counsel");[2] the Defendant's Reply;[3] and the record in this matter, the following is my Report and Recommendation.

## FACTS AND PROCEDURAL HISTORY

On July 5, 2024, Defendant entered a smoke shop in Newark, Delaware where, according to witnesses and surveillance footage, he engaged in a verbal confrontation with a fellow patron.[4] Soon thereafter, Defendant left the store, entered a grey Mazda sedan, and proceeded northbound on Salem Church Road.[5] According to further witnesses and surveillance footage from the area, the vehicle was seen entering the shoulder where it collided with a pedestrian who was wearing similar clothes to the individual Tenaglia was seen arguing with in the smoke shop.[6] The driver of the vehicle did not stop after the collision and continued northbound.[7]

---

[1] Docket Item 29. For purposes of this Report and Recommendation, all docket item references relate to Superior Court Criminal Docket, *State v. Tenaglia*, Case No. 2407012475 (hereinafter, "D.I. ____").

[2] D.I. 35.

[3] D.I. 36.

[4] D.I. 35.

[5] *Id.*

[6] *Id*; *see also* D.I. 39, Sentencing Transcript, dated September 9, 2025, at 13 (hereinafter, "D.I. 39 at __"), where the State notes that the victim "was walking on the side of the road, had nothing to do with whatever interaction occurred over at the smoke shop . . ." *Id.*

[7] D.I. 35.

The victim was identified as Michael D'Aloise, who ultimately passed away as a result of the injuries he sustained from being struck by the vehicle.[8]  An investigation ensued which identified the vehicle as belonging to Tenaglia.[9]  The car was located by officers on July 10, 2024, in Claymont, Delaware.[10]  Tenaglia was brought in by police for an interview where he confirmed his involvement in the incident but explained that he "didn't mean to hit him…I was just trying to scare him."[11]

On July 29, 2024, a Superior Court Grand Jury indicted Tenaglia for (i) Murder First Degree, (ii) Possession of a Deadly Weapon During the Commission of a Felony ("PDWDCF"), (iii) Leaving the Scene of a Collision Resulting in Death, and (iv) Failure to Report a Collision Resulting in Injury or Death.[12]  The same day, this Court issued a Rule 9 Warrant,[13] and Defendant was subsequently arrested.

According to Trial Counsel's Affidavit, he "met numerous times with Mr. Tenaglia in person at the jail and over videophone," during the pendency of the action.[14]  Trial Counsel states that these meetings consisted of discussions of the

---

[8] *Id.*
[9] *Id.*
[10]  *Id.*
[11] *Id.*
[12] D.I. 1.
[13] D.I. 3.
[14] D.I. 35.  Trial Counsel indicates that he met with Defendant eight (8) times in-person on each of August 5, 2024, September 10, 2024, September 30, 2024, November 7, 2024, April 2, 2025, August 27, 2025, and August 29, 2025, as well as seven (7) times via videophone on each of August 12, 2024, August 25, 2024, December 4, 2024, February 6, 2025, May 2, 2025, July 17, 2025, and September 24, 2025.  *Id.*

3

case, review of discovery, and the gathering of background and mitigating information to assist in preparation of a defense.[15]  Trial Counsel explains that a mitigation specialist from the Office of Defense Services, Rasheena Bungy, also met with Defendant during this period.[16]  Ms. Bungy also spoke to Defendant's family, as well as key witnesses in order to prepare a mitigation report.[17]  Trial Counsel further notes that he retained a forensic neuropsychologist, Dr. Joseph Goin, who met with Defendant in person in February of 2025 to conduct a neuropsychological examination.[18]  Dr. Goin issued a report regarding Tenaglia which made multiple diagnoses, including ADHD, Mixed Substance Abuse, Major Depressive Disorder, and Tourette's Syndrome.[19]  The report, however, "did not opine that Mr. Tenaglia met the criteria for a mental health defense such as not guilty by reason of insanity or guilty but mentally ill."[20]  Even so, Trial Counsel explains that he employed Dr. Goin's report in plea negotiations with the State.[21]

In April of 2025, the State extended a plea offer for one (1) count of Murder Second Degree and one (1) count of PDWDCF.[22]  The offer contemplated a minimum mandatory sentence of seventeen (17) years and, as part of the

---

[15] *Id.*
[16] D.I. 35.
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.*

negotiations, the parties agreed to recommend a total of twenty-two (22) years of unsuspended prison time. Trial Counsel explains that once the offer was received, he met with Defendant on several occasions to discuss the benefits and drawbacks of accepting the plea offer, while impressing upon Tenaglia that the decision to accept or deny the plea offer was his alone.[23]

Ultimately, Tenaglia chose to accept the State's offer and pled guilty to one count each of Murder Second Degree and PDWDCF at his case review on March 8, 2025.[24] The Court found Defendant's plea to be made knowingly, intelligently, and voluntarily and ordered a pre-sentence investigation.[25] Trial Counsel explains that, prior to sentencing, he submitted a memorandum to the Court which provided background information, mitigating circumstances, Dr. Goin's neuropsychological evaluation, the mitigation report prepared by Ms. Bungy, and multiple letters of good character written on behalf of Defendant.[26] On September 9, 2025, this Court sentenced Defendant to the agreed upon joint recommendation of twenty-five years at Level V, suspended after twenty years, followed by six months of Level IV, followed by two years of Level III probation for Murder Second Degree, as well as

---

[23] *Id.*

[24] *Id.*; *see* D.I. 23.

[25] *Id.*; *see* D.I. 23, Plea Hearing. Case Review/Plea Colloquy, at 2:22:37 PM (on file with Delaware Superior Court Prothonotary).

[26] D.I. 35; D.I. 39 at 15, 21-22.

five years at Level V, suspended after two years, followed by two years of Level III probation for PDWDCF.[27]

On September 29, 2025, Defendant filed a *pro se* Motion for Postconviction relief.[28] On October 28, 2025, this Court ordered Trial Counsel to submit an affidavit in response to the factual allegations of ineffective assistance of counsel raised by Defendant.[29] After an extension was granted on December 3, 2025,[30] Trial Counsel filed his Affidavit in Response on December 17, 2025.[31] Defendant then filed a Reply *pro se* on December 31, 2025.[32] On January 23, 2026, the matter was referred to a Commissioner for a report and recommendation.[33] The matter is now ripe for decision.

## **DEFENDANT'S CLAIMS FOR POSTCONVICTION RELIEF**

In his *pro se* Motion for Postconviction Relief, Tenaglia raises two claims of ineffective assistance of counsel.[34] First, Defendant alleges "Ineffective Pre-Trial Counsel occurred when there was complete denial of counsel under *Cronic*."[35] Specifically, Defendant argues that he experienced a complete denial of counsel

---

[27] D.I. 27; D.I. 39 at 23-25.
[28] D.I. 29.
[29] D.I. 32, *See also* Super. Ct. Crim. R. 61 (g)(2).
[30] D.I. 33.
[31] D.I. 35.
[32] D.I. 36.
[33] D.I. 38.
[34] D.I. 29.
[35] *Id.*; *see United States. v. Cronic*, 466 U.S. 648 (1984).

during a critical stage of the proceedings because the "[d]efense did not challenge the State's prosecution for the [D]efendant"[36] and Trial Counsel did not file any pretrial motions on Defendant's behalf.[37] Second, Defendant asserts ineffective assistance of counsel based on Trial Counsel's alleged failure to provide the Court with mitigating factors.[38] Specifically, Defendant contends that counsel failed to explain to the Court Defendant's mental health history and recent psychiatric commitment, which Defendant believes would have led to a plea offer for "guilty, but mentally ill" or manslaughter.[39]

For the reasons discussed below, Tenaglia's claims for ineffective assistance of counsel were both waived upon entry of his guilty plea and are lacking in merit.

## APPLICABLE LAW GOVERNING POSTCONVICTION RELIEF

**Rule 61 and Procedural Bars to Relief**

Superior Court Criminal Rule 61 ("Rule 61") governs the procedures by which an incarcerated individual may seek to have his conviction set aside on the ground that the court lacked jurisdiction or any other ground that is a sufficient factual and legal basis for a collateral attack upon the conviction.[40] That is, it is a means by which the court may correct Constitutional infirmities in a conviction or

---

[36] *Id.*
[37] D.I. 36.
[38] *Id.*
[39] *Id.*
[40] Super. Ct. Crim. R. 61(a)(1).

sentence.[41]  "Rule 61 is intended to correct errors in the trial process, not allow defendants unlimited opportunities to relitigate their convictions."[42]

Given that intent, before considering the merits of any claims for postconviction relief, the Court must first determine whether there are any procedural bars to Defendant's postconviction motion.[43]  Rule 61(i) establishes four procedural bars to postconviction relief.[44]  Rule 61(i)(1) prohibits the Court from considering a motion for postconviction relief unless it is filed within one year after the judgment of conviction is final. [45]  Rule 61(i)(2) bars successive motions for postconviction relief unless certain conditions are met.[46]

Rule 61(i)(3) provides that "any ground for relief not asserted in the proceedings leading to the judgment of conviction" is barred, unless the movant shows (a) cause for relief from the procedural default, and (b) prejudice from the violation of movant's rights.[47]  Rule 61(i)(4) provides that "any ground for relief that was formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, is thereafter barred."[48] However, ineffective assistance of

---

[41] *Harris v. State*, 410 A.2d 500 (Del. 1970).
[42] *Ploof v. State*, 75 A.3d 811, 820 (Del. 2013).
[43] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[44] Super. Ct. Crim. R. 61(i)(1)-(4).
[45] Super. Ct. Crim. R. 61(i)(1).
[46] Super. Ct. Crim. R. 61(i)(2).
[47] Super. Ct. Crim. R. 61(i)(3).
[48] Super. Ct. Crim. R. 61(i)(4).

counsel claims cannot be raised at any earlier stage in the proceedings and are properly presented by way of a motion for postconviction relief.[49] Lastly, the aforementioned bars to relief do not apply either to a claim that the Court lacked jurisdiction or to a claim that satisfies the pleading requirements of Rule 61(d)(2)(i)-(ii).[50]

Tenaglia pled guilty on September 9, 2025[51] and filed his *pro se* Motion for Postconviction Relief on September 29, 2025.[52] Having not appealed, his judgment of conviction became final on December 9, 2025, thirty days after the imposition of his sentence. As such, his postconviction motion was timely filed within one year after his judgment of conviction was final and is not procedurally barred by Rule 61(i)(1). Nor is his postconviction motion barred by for being repetitive pursuant to Rule 61(i)(2) as this is his first postconviction motion. Finally, because ineffective assistance of counsel claims cannot be raised at any earlier stage in the proceedings, neither of Tenaglia's postconviction claims are procedurally barred pursuant to Rule 61(i)(3).

---

[49] *Sabb v. State*, 2021 WL 2229631, at *1 (Del. Super. May 28, 2021); *Green v. State*, 238 A.3d 160, 187-88 (Del. 2020); *Whittle v. State*, 2016 WL 2585904, at *3 (Del. Super. Apr. 28, 2016); *State v. Evan-Mayes*, 2016 WL 4502303, at *2 (Del. Super. Aug. 25, 2016).

[50] Super. Ct. Crim. R. 61(i)(5). Defendant does not assert that this Court lacks jurisdiction or a claim that would satisfy Rule 21(d)(2)(i) or (ii).

[51] D.I. 25.

[52] D.I. 29.

**Tenaglia's Claims of Ineffective Assistance of Counsel Have Been Waived**

Notwithstanding the lack of procedural bars, Tenaglia waived any claims he had for ineffective assistance of counsel upon rendering his guilty plea.

To prevail on a claim for ineffective assistance of counsel, a defendant must satisfy the two-prong test set forth in *Strickland v. Washington*.[53] This test requires that a defendant demonstrate that (a) his counsel's performance was deficient and (b) that said deficiency prejudiced him.[54]

To establish deficient performance, a defendant must show by a preponderance of the evidence that his attorney's performance "fell below an objective standard of reasonableness" under the prevailing professional norms.[55] That is, he was not reasonably competent.[56] Judicial scrutiny under the first prong is highly deferential. Courts must ignore the distorting effects of hindsight and proceed with a strong presumption that counsel's conduct was reasonable.[57] To establish prejudice, a defendant must show that there exists a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceedings would have been different.[58]

---

[53] *Strickland v. Washington*, 466 U.S. 688 (1984).
[54] *Id.* at 687-88, 694.
[55] *Id.* at 688.
[56] *Id.* at 687-88, 694.
[57] *Id.* at 689.
[58] *Id.* at 694.

When evaluating claims of ineffective assistance of counsel, there is a strong presumption that counsel's conduct fell within a wide range of reasonable professional assistance and constituted sound strategy.[59] Mere allegations of ineffectiveness will not suffice; instead, a defendant must make and substantiate concrete allegations of actual prejudice.[60] In evaluating counsel's performance, the Court must "reconstruct the circumstances of counsel's challenged conduct," and "evaluate the conduct from counsel's perspective at the time."[61]

In the context of a guilty plea, to establish prejudice under *Strickland*, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.[62] A defendant's statements during a plea colloquy are presumed to be truthful,[63] and a defendant "is bound by all the representations…made during [the] plea colloquy" absent clear and convincing evidence that the statements were not made knowingly, voluntarily, and intelligently.[64] Moreover, "a voluntary guilty plea waives a

---

[59] *Id.* at 698; *Gattis v. State*, 697 A.2d 1174, 1184 (Del. 1997).
[60] *Zebroski v. State*, 822 A.2d 1038, 1043 (Del. 2003); *Gattis*, 697 A.2d at 1178-79.
[61] *Strickland*, 466 U.S. at 689.
[62] *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).
[63] *Somerville v. State*, 703 A.2d 629, 632 (Del. 1997).
[64] *Hammons v. State*, 2005 WL 2414271, at *1 (Del. Supr. Sep. 28, 2005); *see also State v. Richardson*, 2025 WL 617829, at *3 (Del. Super. Ct. Feb. 20, 2025); *State v. Harden*, 1998 WL 735879, at *5 (Del. Super. Ct. Jan. 13, 1998); *State v. Stuart*, 2008 WL 4868658, at *3 (Del. Super. Ct. Oct. 7, 2008).

defendant's right to challenge any errors or defects before the plea, even those of constitutional dimension."[65]

In the subject action, the Plea Agreement and Truth-in-Sentencing Guilty Plea Form indicate that Tenaglia knowingly, voluntarily, and intelligently entered a guilty plea.[66] During the guilty plea colloquy, Tenaglia provided sworn testimony that (1) he reviewed and understood the Plea Agreement, Truth-in-Sentencing Guilty Plea Form, and the Immediate Sentencing Form,[67] (2) defense counsel addressed any issues, questions, or concerns that he had,[68] and (3) he had not been threatened or forced to plead guilty.[69] Tenaglia further represented that he was satisfied with trial counsel's representation,[70] understood the Constitutional rights he was giving up by entering the plea, and admitted his guilt to both charges comprising the Plea Agreement.[71] The Court thereafter found Tenaglia's plea to be knowing, intelligent, and voluntary.[72]

---

[65] *Smith v. State*, 2004 WL 120530, at *1 (Del. Supr. Jan. 15, 2024); *see also Somerville v. State*, 703 A.2d 629, 632 (Del. 1997) ("[A] guilty plea constitutes a waiver of a trial on the charges and a waiver of the constitutional rights to which he or she would have been entitled to exercise at a trial."); *Rodriguez v. State*, 2003 WL 1857547, at *1 (Del. Supr. Apr. 7, 2003) (stating that a defendant's guilty plea "eliminates his claim relating to events that occurred before the entry of the plea[.]").

[66] D.I. 23, Plea Hearing. Case Review/Plea Colloquy, at 2:22:37 PM (on file with Delaware Superior Court Prothonotary).

[67] *Id.* at 2:13:57 PM, 2:16:27 PM.

[68] *Id.* at 2:22:16 PM.

[69] *Id.* at 2:21:55 PM.

[70] *Id.* at 2:22:23 PM.

[71] *Id.* at 2:16:48 PM.

[72] *Id.* at 2:22:37 PM.

Tenaglia does not contend that his plea was involuntarily entered. Nor has he presented any clear, contrary evidence to call into question his testimony at the plea colloquy or answers in the Truth-in-Sentencing Guilty Plea Form. Accordingly, Tenaglia's valid guilty plea waived his right to challenge any alleged errors, deficiencies or defects occurring prior to the entry of his plea, even those of constitutional proportions.[73]

**Tenaglia's Claims of Ineffective Assistance of Counsel Are Without Merit**

Although the query could conclude at this point, the Court will, nonetheless, address Tenaglia's individual claims of ineffective assistance of counsel on a substantive basis, each of which has no merit.

First, Defendant alleges that his Sixth and Fourteenth Amendment Rights were violated due to Trial Counsel's failure to "challenge the state's prosecution."[74] Citing *Cronic*, Defendant argues that he lacked the aid of an attorney during the critical pre-trial stages of the case.[75] The record, however, does not support this assertion. Trial Counsel's Affidavit explains that, during the pre-trial stages, (i) Trial Counsel met with Defendant at least fifteen (15) times in-person and via

---

[73] *Evans v. State*, 2025 WL 1565409 (Del. Super. Ct. June 2, 2025) (affirming judgment of Superior Court and finding defendant entered his guilty plea knowingly, intelligently, and voluntarily, and therefore waived his claim that counsel failed to investigate and then file a motion to suppress); *Smith v. State*, 2004 WL 120530, at *1 (Del. Supr. Jan. 15, 2004); *Somerville v. State,* 703 A.2d 629, 632 (Del. 1997); *Modjica v. State*, 2009 WL 2426675 (Del. Supr. Aug. 10, 2009); *Miller v. State*, 840 A.2d 1229, 1232 (Del. 2003).
[74] D.I. 29.
[75] *Id.*

videophone,[76] (ii) a Mitigation Specialist from the Office of Defense Services met with Defendant and interviewed his family and witnesses to prepare a mitigation report,[77] (iii) Trial Counsel retained a forensic neuropsychologist who evaluated Defendant in-person in February of 2025 and prepared a report which was used in both plea negotiations and sentencing mitigation,[78] and (iv) Trial Counsel met with Defendant multiple times in April of 2025 to discuss the benefits and disadvantages of the State's plea offer.[79]

In asserting a complete denial of counsel during a critical stage of the proceedings, Defendant appears to cite *Cronic* as a means of avoiding his burden to show a prejudicial effect under *Strickland*.[80] In *Cronic*, the United States Supreme Court made clear that in a scenario where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable."[81] Notwithstanding the facts recited above which directly undermine Defendant's contention, the criteria considered by the lower court in *Cronic* do not

---

[76] D.I. 35.
[77] *Id.*
[78] *Id.*; D.I. 39 at 21-23.
[79] D.I. 35.
[80] D.I. 29; *see United States. v. Cronic*, 466 U.S. 648, 659 (1984) (explaining that the United States Supreme Court has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent or prevented from assisting the accused during a critical stage of the proceeding.) (*citing Geders v. United States*, 425 U.S. 80 (1976)).
[81] *Cronic*, 466 U.S. 648, 659 (1984) (*citing Powell v. Alabama,* 287 U.S. 45 (1932)).

support Tenaglia's claim of ineffective assistance of counsel, but rather, demonstrate that Tenaglia's claim lacks merit.

In *Cronic*, the Supreme Court found that the Court of Appeals erred when it reversed defendant's conviction because it "inferred that respondent's constitutional right to the effective assistance of counsel had been violated" based solely upon the circumstances surrounding the representation.[82] Those circumstances included the following:

> (1) [T]he time [the Court] afforded [counsel] for investigation and preparation; (2) the experience of counsel; (3) the gravity of the charge; (4) the complexity of possible defenses; and (5) the accessibility of witnesses to counsel.[83]

The Supreme Court found the foregoing factors employed by the Court of Appeals in its holding to be improper because they mandated reversal of defendant's conviction even if the attorney's actual performance was flawless.[84] In reversing, the Supreme Court found that the circumstances surrounding defendant's representation and, in particular, the five factors enumerated by the Court of Appeals, did not justify a presumption that counsel had been ineffective and that the defendant could only make out a claim of ineffective assistance of counsel by pointing to specific errors made by trial counsel.[85]

---

[82] *Id.* at 652.
[83] *Id.* (internal quotations omitted).
[84] *Id.* at 652-53.
[85] *Id.* at 662-66.

Here, Trial Counsel was not given a mere twenty-five days to prepare for trial as was the case in *Cronic*. Trial Counsel was appointed following Tenaglia's indictment on July 29, 2024, and remained his defense counsel until Defendant pled guilty on May 8, 2025. Tenaglia cannot credibly argue that there was a lack preparation time by Trial Counsel as had been argued in *Cronic*.[86]

Like *Cronic*, however, the collection of evidence gathered by the prosecution in this case simplified Trial Counsel's tasks of understanding the Defendant's circumstances.[87] By virtue of Defendant's guilty plea, Trial Counsel had no opportunity to address the factual or legal allegations before a jury. Nevertheless, it appears to the Court that Trial Counsel was prepared and acting as an effective representative based on the numerous meetings with Defendant[88] and the mitigation reports produced.[89] Moreover, the forensic report authored by Dr. Goin was utilized by Trial Counsel during plea negotiations with the State, and Trial Counsel effectively explained the pros and cons of the plea offer with Defendant before his acceptance.[90] Finally, Trial Counsel is an experienced Delaware public defender of

---

[86] *Cronic*, 466 U.S. at 663.
[87] *Id.* at 683-84. The facts of the underlying crime in *Cronic* were not in dispute, only the question of defendant's intent to defraud.
[88] See D.I. 35.
[89] See D.I. 35; D.I. 26.
[90] See D.I. 35.

over fourteen years,[91] and Defendant makes no allegation that Trial Counsel lacked the ability or experience to handle his case.[92]

For these reasons, the record does not support a finding of complete deprivation of counsel as contemplated by *Cronic* that would relieve Tenaglia of his burden to demonstrate prejudice under *Strickland*. As such, Defendant must satisfy the two-prong test set forth in *Strickland* to prevail on his claims of ineffective assistance of counsel.[93] He is unable to do so. First, as previously discussed, counsel's performance was objectively reasonable under the circumstances. To reiterate, the record reflects that there were no less than fifteen (15) meetings between Trial Counsel and Tenaglia both before and after the plea offer, including a meeting in April of 2025 to discuss the offer, as well as meetings regarding the retention of a psychological expert for the purposes of mounting a defense.[94] Second, Defendant makes no allegation of prejudice with respect to his first claim. Nothing in the record suggests that Trial Counsel had any basis to file a pre-trial motion to suppress evidence. Nor does Tenaglia assert how his case would have been different if Trial Counsel had filed any pre-trial motions and prevailed. As

---

[91] *Id.*

[92] D.I. 29, D.I. 36.

[93] *See United States. v. Cronic*, 466 U.S. 648, 658-59 (1984) (explaining that there are situations, such as counsel's complete failure to subject the prosecution's case to meaningful adversarial testing, that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.).

[94] D.I. 35.

such, Tenaglia's first claim for ineffective assistance of counsel is unsubstantiated and without merit.

Second, Defendant contends Trial Counsel was ineffective for failing to present mitigating circumstances to the Court.[95] Defendant argues that if Trial Counsel had presented evidence of Defendant's mental health history, he would have been offered a plea of "guilty but mentally ill" by the State or the lesser included offense of manslaughter.[96] The record does not support such an assertion.

It is unquestionable that "the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel."[97] Even so, the United States Supreme Court has clarified that the *Strickland* analysis applies similarly.[98] Specifically, in the context of a guilty plea, a defendant must first "demonstrate that the advice was not within the range of competence demanded of attorneys in criminal cases."[99] To show prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[100]

---

[95] D.I. 29.
[96] *Id.*
[97] *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010), *citing Hill v. Lockhart*, 474 U.S. 52, 57 (1985).
[98] *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).
[99] *Id.* at 58-59, *citing Tollet v. Henderson*, 411 U.S. 258, 266 (1973), *McMann v. Richardson*, 397 U.S. 759, 771 (1970).
[100] *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Here, Tenaglia makes no such argument and points to no specific errors allegedly made by Trial Counsel. It appears to the Court that there is little doubt that Trial Counsel's performance was within the range of competence demanded by attorneys of criminal cases. The record reflects that Trial Counsel (i) engaged a mitigation specialist from the Office of Defense Services, Ms. Bungy, who interviewed Defendant, collected records, and spoke with Defendant's family as well as collateral witnesses in order to prepare a mitigation report,[101] (ii) secured a forensic neuropsychologist, Dr. Joseph Goin, who evaluated Defendant, and produced a report setting forth Defendant's mental health history and diagnoses,[102] and (iii) submitted a sentencing memorandum which included Defendant's background information, an outline of the mitigating circumstances, the neuropsychological evaluation report produced by Dr. Goin, the mitigation report produced by Ms. Bungy, as well as multiple character letters written in support of Defendant.[103] Finally, at the Plea Hearing on May 8, 2025, Trial Counsel specifically noted to the Court that Defendant had previously been a patient at a mental health facility, and was admitted to Wilmington Hospital shortly before his

---

[101] D.I. 35.
[102] *Id.*
[103] *Id.*, D.I. 26.

19

arrest in July of 2024.[104] Based on the foregoing, Trial Counsel's efforts were within the range of competence required under the Sixth Amendment.

Moreover, nothing in the record supports the notion that there is a reasonable probability that Defendant would have received either of the plea offers he suggests. As previously noted, Trial Counsel explains in his affidavit that the psychological report produced by Dr. Goin "did not opine that Mr. Tenaglia met the criteria for a mental health defense such as not guilty by reason of insanity or guilty but mentally ill."[105] In light of the foregoing, there was no good faith basis in this case for Trial Counsel to have made an argument for a plea of "guilty but mentally ill" during negotiations nor would the Court have likely accepted such a plea in view of the report.[106] Similarly, based on the evidence collected by the State, which included video of the collision pursuant to which the Court was able to discern the intent of Tenaglia, there is a not a reasonable probability that Defendant would have received an offer to plead to manslaughter.[107]

---

[104] D.I. 23, Plea Hearing. Case Review/Plea Colloquy, at 2:10:46 PM (on file with Delaware Superior Court Prothonotary).

[105] D.I. 35.

[106] Delaware law establishes specific procedural requirements for accepting a guilty but mentally ill plea. Pursuant to 11 *Del. C.* § 408(a), "no finding of 'guilty, but mentally ill' shall be rendered until the trier of fact has examined all appropriate reports (including the presentence investigation); has held a hearing on the sole issue of the defendant's mental illness, at which either party may present evidence; and is satisfied that the defendant did in fact have a mental illness at the time of the offense to which the plea is entered."

[107] D.I. 39 at 22.

The *Strickland* analysis aside, Defendant's second claim of ineffective assistance of counsel is factually inaccurate as it is clear from the record that mitigating facts and circumstances were provided to the Court,[108] and the Court ordered a pre-sentence investigation to consider Defendant's circumstances before sentencing.[109] The Court required information regarding Tenaglia's background, mental health, and drug use in order to determine an appropriate sentence, ultimately finding the facts warranted the agreed upon twenty-two years of unsuspended imprisonment.[110]  Furthermore, there is no evidence that Defendant expressed dissatisfaction with his plea offer to counsel after it was received.

Significantly, the offer allowed Defendant to plead guilty to the lesser offense of Murder Second Degree as opposed to Murder First Degree with which he was originally charged.  Defendant's acceptance of the State's offer to plead to Murder Second Degree and PDWDCF was a rational decision to avoid a trial where the downside could have resulted in life in prison if convicted of Murder First Degree. Indeed, in light of the facts and circumstances of this case as well as the substantial evidence procured by the State, it was unlikely Defendant would have prevailed at trial and the plea was his best option.  For all of these reasons, the Court finds that Defendant's second claim of ineffective assistance of counsel is without merit.

---

[108] D.I. 26; D.I. 39 at 21-23.
[109] D.I. 23; D.I. 39 at 21-23.
[110] D.I. 27.

## CONCLUSION

For the foregoing reasons, Tenaglia's Motion for Postconviction Relief should

be **DENIED.**

    **IT IS SO RECOMMENDED.**


                                      */s/ Janine M. Salomone*
                                      The Honorable Janine M. Salomone


oc:    Prothonotary
cc:    Joseph S. Grubb, Esquire, Deputy Attorney General
         Barzilai K. Axelrod, Esquire, Deputy Attorney General
         Andrew J. Meyer, Esquire, Office of Defense Services
         Joshua J. Tenaglia (SBI #00562844)